In re the Marriage of Lori A. QUIRK–EDWARDS and Kirk R. Edwards.

Upon the Petition of Lori A. Quirk–Edwards, Appellant,

And Concerning Kirk R. Edwards, Appellee.

No. 93–09.

Supreme Court of Iowa.

Dec. 22, 1993.

Richard H. Zimmerman of Zimmerman Law Office, Iowa City, for appellant.

John Wunder, Muscatine, and Kirk R. Edwards, pro se, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL, and TERNUS, JJ.

SNELL, Justice.

This appeal is from a modification of a dissolution decree whereby the physical custody of the parties' child was changed from the mother to the father. We affirm. In this equity action, involving the modification of child custody, our review is de novo. Iowa R.App.P. 4.

Lori A. Quirk–Edwards and Kirk R. Edwards were married on June 22, 1990. In March 1991, their child Bryce was born. The marriage was dissolved by the court's decree entered on January 31, 1992. During the hearings on the dissolution of marriage, considerable animosity between Kirk and Lori was evident. A disagreement on naming their child culminated in a decision by our court filed on August 25, 1993. *See In re Matter of Quirk*, 504 N.W.2d 879 (Iowa 1993).

The dissolution court awarded joint legal custody and gave physical custody to Lori

Quirk, subject to reasonable visitation rights reserved to Kirk Edwards. The court further found as follows:

> The Court must address the issue raised by the petitioner concerning her leaving this jurisdiction. The petitioner testified that she might relocate to some other jurisdiction, possibly the Sunbelt or western United States. This Court does not believe the petitioner in this regard but finds this evidence merely to be another ploy used by the petitioner to assert control over this child. However, in the event that the petitioner does relocate, this Court does hereby direct that said relocation may be interpreted in future proceedings as a substantial change of circumstances regarding this child's custody.

Less than four months after the decree, Kirk was notified through Lori's attorney that she was moving from Muscatine, Iowa, to Colorado.

On learning of Lori's plans to leave the Iowa jurisdiction, Kirk wrote to her attempting to set up his extended visitation for June 2, 1992 to June 7, 1992. That visitation was thwarted by Lori citing Bryce's seizures, hospitalization and a misunderstanding. On June 9, Lori moved to Colorado taking with her Bryce and Brianna, her child by another father.

Kirk then filed the application for modification of custody considered here. Judge James R. Havercamp in hearing the matter extensively reviewed the evidence and findings of Judge John A. Nahra, who ruled in the decree of dissolution. He noted that Judge Nahra expressed concern about Lori's past motives in restricting parental contact with the two minor children in her physical custody. He noted her continuing reluctance to cooperate as a joint custodian with the other noncustodial parent in making decisions. In resolving the issue of physical custody, Judge Nahra had said:

> The evidence does, however, support the conclusion that the petitioner properly meets the physical and home environmental needs of this child and her child from a previous union. The evidence also leaves this Court concerned about the mental and emotional well being of this child as it relates to the parent-child relationship with the respondent if the petitioner were to continue manufacturing innuendo about the respondent and would communicate those matters to this child.

> The respondent, on the other hand, should be commended for his ongoing involvement and commitment to the process of maintaining a relationship with this child. It appears that he arranges time off work to be with his child and, as well, participated in parenting classes.

> . . . .

> Much to the parties' discontent, this Court finds that the respondent shall receive visitation which will allow him maximum contact with this child. It is the hope of the Court that this maximum contact will serve as a mediating force between the parties in the best interest of this child.

Regarding the week visitation period requested by Kirk for June 2 the parties dispute the reasons for its not being effected. On May 28 Bryce suffered two seizures from a high fever, was taken to and released from the hospital. No restrictions were placed on his activities. Lori notified Kirk of the problem and Kirk was present at the hospital. Lori had not objected to the planned visitation starting on June 2 either before the seizures occurred or at the hospital. However, when Kirk arrived on June 2 to pick up Bryce for one week, he claims Lori refused to relinquish Bryce because of medical complications. He declined her offer of limited daily visitation fearing that to accept would cost him his right to a week of custody later. Lori asserts that Kirk was ambivalent about taking Bryce when he was ill and so declined to exercise the week long visitation. Kirk's application for a finding that Lori was in contempt was rejected by Judge Havercamp, who believed it was not established beyond a reasonable doubt that Lori deliberately and wilfully disobeyed the court's visitation order.

Lori left Iowa on June 9 arriving in Colorado on June 12, approximately one week after the prior planned visitation would have ended. She was advised by her doctor that the seizures were probably the result of fever from an ear infection and were unlikely to

recur. Bryce had no medical problems from the trip.

On June 15 and 18 Bryce was seen by doctors at hospitals for recurrent febrile seizures. He was put on medication and Lori was told there was probably no significant medical problem. On June 19, Kirk drove to Thornton, Colorado to visit Bryce for his regularly scheduled weekend visitation. He made no call in advance; Lori was surprised to see him about 7:00 p.m. Lori told Kirk that Bryce was too ill to be seen then. Kirk was able to exercise three hours visitation the next day.

While in Colorado Kirk notified all doctors and hospitals providing treatment for Bryce of his name and address and that he had insurance coverage for his son in the name of Bryce Edwards, the name determined by the trial court. Lori submits claims for medical care in the name of Bryce Quirk, the name chosen by her and says that Kirk has failed to provide medical insurance as ordered by the court. Welfare thus pays Bryce's expenses in Colorado. Judge Havercamp viewed this as an example of Lori's concern for herself rather than for Bryce's welfare.

Dr. Ruth Evans, who holds a Ph.D in child psychology, testified at both the dissolution and modification hearings. At the time of the initial divorce hearing, she recommended physical custody of Bryce, then eight months old, remain with Lori. She qualified this by suggesting a review in six months when she thought some very basic unknowns would be determined. Her concerns were that Lori's dependency needs, possessiveness, and somewhat negative focus represented compromised parental capacity on her part. She recalled these concerns at the modification hearing:

> Because of her personality for one thing, her history of keeping her child close to herself, being rigid, it's almost like she keeps the child one with herself. Difficulty in allowing the child to express herself and expressing different opinions, her mistrust of people that seem to be perpetuating to the older daughter. There were some very serious concerns. But Lori was in the home of her parents and there was a nice backup there.

However, at the modification hearing she recommended a change of custody to the father, noting:

> It's several months down the road, and I see that he has demonstrated capability and motivation to become a full-time parent. I have gone out to visit the home that he's purchased. It's obvious that he's made a great effort to provide an appropriate home setting for that child, and his interest hasn't waned at all. His motivation seems to be as strong as ever. And I feel that given his better adjusted personality and approach to people and interactions that at this time he would be the better caretaker for Bryce.

Dr. Evans stated that she had no reservations about Kirk's ability to be the primary caregiver for Bryce.

Reinforcement of the analysis that Lori rejected Kirk's involvement in Bryce's life came from Lori's own therapist. She thought that Lori perceived the father of her children as harmful to them. Dr. Evans viewed Lori's original naming of Bryce as Quirk, rather than the surname Edwards, and her resistance to Kirk's attempt to change the name, as an indication of Lori's efforts to minimize the father's involvement with Bryce.

Related to this issue is the stance taken by Lori toward the father of her older child, Brianna. When the trial court awarded joint legal custody and visitation rights to Brianna's father, Lori appealed on both issues. She argued that the parties' inability to communicate justified a denial of joint custody and the visitation granted was excessive. The Iowa Court of Appeals rejected both of these claims in an unpublished opinion.

In considering custody matters we follow the directions of the legislature in Iowa Code section 598.41 (1991). Subsection 1 includes the following prescription:

> The court shall consider the denial by one parent of the child's opportunity for maximum continuing contact with the other parent, without just cause, a significant factor in determining the proper custody arrangement.

When joint legal custody is considered, a statutory factor under section 598.41(3)(b) is: "Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents." Section 598.-1(1) defines "best interest of the child" as follows:

"*Best interest of the child*" includes, but is not limited to, the opportunity for maximum continuous physical and emotional contact possible with both parents, unless direct physical or significant emotional harm to the child may result from this contact. Refusal by one parent to provide this opportunity without just cause shall be considered harmful to the best interest of the child.

■ There are several important factors we consider in determining whether removal of a child from the jurisdiction by the custodial parent should be prevented. They include "the reason for removal, location, distance, comparative advantages and disadvantages of the new environment, impact on the children, and impact on the joint custodial and access rights of the other parent." *In re Marriage of Frederici*, 338 N.W.2d 156, 160 (Iowa 1983). In concluding that there were insufficient grounds to deny removal in *Frederici*, our court emphasized that there was no hint in the record that the move by the custodial mother was motivated by a desire to defeat the father's visitation rights or undermine his relationship with his children. *Id.*

■ Citing these guidelines, Judge Havercamp found that Lori's apartment in Thornton, Colorado, was large enough, well furnished, and adequate for a family of three. However, Lori was not employed, did not attend school, and had no family except a brother or friends located in the area. She receives less AFDC in Colorado than she received in Iowa. Although Kirk was a joint legal custodian of Bryce, Lori failed to immediately notify him of her address in Colorado or her telephone number where she could be located.

There is no assertion made in this case that Lori has not adequately provided care for Bryce. The sole issue is the legal effect of Lori's conduct regarding the contact between Bryce and his father through visitation rights.

Judge Havercamp, analyzing Lori's motivations, found:

One need only refer to the findings of fact and exhaustive parental responsibility and visitation schedule enumerated by the decretal court to understand that problems existed in Petitioner's extending to Respondent noncustodial parental contact which limitation was considered significant and a continuation of which was considered adverse, to the welfare of Bryce. Petitioner appeared to be dedicated to a course of conduct which would limit, if not eliminate, Respondent from Bryce's life. It had occurred with Brianna's father. When Petitioner moved to Colorado she severely limited noncustodial parental contact of the fathers of both of her children, Bryce and Brianna. She consulted neither parent with respect to her move; it is disruptive and would require adjustment by the children; the children would effectively be deprived of desired contact and a continued relationship with their fathers; she did not substantially improve her position, either physically or financially; and the expense of travel and communication as a result of the move will be a serious financial burden on each noncustodial father.

Other than her vague representation that a move would benefit her in alleviating custody related stress and tension, getting away from her family, and starting a new life, every fact in this record indicates Petitioner was motivated solely by a desire to defeat noncustodial parental visitation rights of each father, and here specifically Respondent, and to take that opportunity to further undermine and limit Respondent's relationship with Bryce. Her reliance on Bryce's now controlled medical condition as justification for her non-appearance in Iowa for hearing and contact between Respondent and Bryce further enhances this opinion.

■ In seeking physical custody of Bryce, Kirk showed he has available a comfortable two-bedroom, story-and-a-half home on three

acres in Letts, Iowa. Next door is a day care center and school facilities are near by. Kirk is employed as a county jailer and has extensive emergency medical training. He testified he would allow Lori liberal visitation rights and also afford her parental and extended family contact with Bryce. Judge Havercamp recognized that a change of custody would create some problems, particularly because of Bryce's good relationship with Brianna, his half-sister. Siblings in dissolution actions should be separated only for compelling reasons. *See In re Marriage of Gonzales,* 373 N.W.2d 152, 155 (Iowa App. 1985); *In re Marriage of Mayer,* 347 N.W.2d 681, 684 (Iowa App.1984). The principle has also been recognized as having application to half siblings. *See In re Marriage of Hunt,* 476 N.W.2d 99, 102 (Iowa App.1991); *In re Marriage of Orte,* 389 N.W.2d 373, 374 (Iowa 1986). Notwithstanding these authorities the trial court found that Lori's continued physical custody and attempts to limit Bryce's contact with his father adversely effects her ability to properly parent Bryce.

We have considered the adverse effect of the custodial parent's interference with the rights of the noncustodial parent in other contexts. *In re Marriage of Udelhofen,* 444 N.W.2d 473, 474–75 (Iowa 1989) (custody changed to father based on outrageous conduct by mother disparaging father to his child); *In re Marriage of Leyda,* 355 N.W.2d 862, 866 (Iowa 1984) (custody changed from mother to father based on proof of alienation of child from father); *In re Marriage of Wedemeyer,* 475 N.W.2d 657, 659 (Iowa App. 1991) (campaign of vindictiveness against father to alienate children justified change of custody). Claims of denied visitation rights have usually been included with other charges of misconduct by the custodial parent. *See, e.g., In re Marriage of Vrban,* 359 N.W.2d 420, 425–26 (Iowa 1984) (credibility of witnesses weighed heavily in finding evidence insufficient to change custody although custodial parent isolated children from their father and moved to Colorado, given the mother's greater parenting skills); *Langner v. Mull,* 453 N.W.2d 644, 649 (Iowa App. 1990) (refusal to cooperate in ensuring visitation rights and criminal behavior and violence of husband of custodial parent provided grounds for change of custody); *In re Marriage of Downing,* 432 N.W.2d 692, 694–95 (Iowa App.1988) (interference with noncustodial parent's relationship with child, removal from state, loss of special program for child and remarried father's more stable home justified changing custody).

■ In contrast, we here have a situation where we are considering only the impact of interference with the visitation rights of the noncustodial parent on the child. If visitation rights of the noncustodial parent are jeopardized by the conduct of the custodial parent, such acts could provide an adequate ground for a change of custody. *In re Marriage of Gratias,* 406 N.W.2d 815, 817–18 (Iowa App.1987) (future interference, even after initial custody decision, with the development of normal, healthy relationships between father and his daughters may serve as grounds for modification of custody).

Judge Havercamp concluded the evidence was overwhelming that Lori willfully sought to deprive Kirk of court-ordered visitation and there was no evidence that she had any interest in changing or improving this condition. Based on this alone, the court determined by a preponderance of the evidence that a permanent material change of circumstances occurred adversely affecting Bryce which required a change of physical custody of Bryce from Lori Quirk to Kirk Edwards. The court so ordered with reasonable and liberal visitation rights reserved to Lori Quirk.

Our de novo review leads us to the same conclusion as the trial court. The decision is affirmed.

**AFFIRMED.**