# IN THE COURT OF APPEALS OF IOWA

No. 14-1107
Filed March 11, 2015

**Upon the Petition of**
**JUSTIN CHARLES SCHLEIDT,**
        Petitioner-Appellant,

**And Concerning**
**SYERRA MICHELLE HUSTON,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Lee (North) County, John M. Wright, Judge.

        A father appeals the decree granting custody of the parties' minor child to the mother.  **AFFIRMED.**

        Kimberly A. Auge of Napier, Wolf, Popejoy & Auge, L.L.P., Fort Madison, for appellant.

        William Monroe of the Law Office of William Monroe, Burlington, for appellee.

        Considered by Potterfield, P.J., Bower, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MAHAN, S.J.**

A father appeals the decree granting custody of the parties' minor child to the mother, arguing he is better able to provide for the child's best interests. We affirm the district court's physical care determination but decline to award the mother appellate attorney fees.

**I. Background Facts and Proceedings.**

Justin Schleidt and Syerra Huston began dating in 2010. They have one child together, L.S., born in 2012. The three lived together in Justin's one-bedroom home along with Syerra's son, E.H., who was born in 2010. The evidence shows the residence was not well-maintained during the relationship. Each party blames the other for failing to properly clean or maintain the home. They also make allegations regarding the other's use of alcohol, marijuana, and synthetic marijuana during the relationship.

When the relationship ended in April 2013, Syerra and the children moved into her mother's home in Hamilton, Illinois. They later moved to Nauvoo, Illinois, to live with Syerra's father, Joey. They remained in Joey's home at the time of trial. Joey has two sons who also live in the five-bedroom home. Syerra was not employed during much of the pendency of this case, and her employment history is sporadic. At the time of trial, Syerra had just found full-time employment, earning approximately $9.50 per hour. She did not know when she would move into a residence of her own.

Justin continues to live in the same home he owned during the relationship. He made some repairs and keeps it clean. At the time of trial, he was employed full-time, earning approximately $11.00 per hour.

On May 3, 2013, Justin petitioned for physical care of L.S. Syerra was granted temporary physical care of the child.

On June 5, 2014, the district court entered a decree granting Syerra physical care of L.S., providing a visitation schedule, and ordering Justin to provide child support. The court noted the parties and their witnesses provided conflicting testimony and found Justin to be a more credible witness than Syerra. While the court had concerns with Syerra's ability to maintain a clean home for L.S. and foster the relationship between Justin and L.S., it ultimately concluded both parents "are roughly equal" in their abilities to care for L.S. However, the court found that maintaining the sibling bond between L.S. and E.H., who lives with Syerra, weighed in favor of placing L.S. in Syerra's care.

## II. Scope of Review.

We review the custody determination de novo. *Jacobson v. Gradin*, 490 N.W.2d 79, 79 (Iowa Ct. App. 1992). We examine the record before us and adjudicate the issues anew. *Id.* at 79-80. Although we give weight to the district court's fact findings, especially those concerning witness credibility, we are not bound by them. *Id.*

## III. Best Interests.

When determining physical care of a child, our primary concern is the child's best interests. *In re Marriage of Murphy*, 592 N.W.2d 681, 683 (Iowa 1999). Our objective is to place the child in the environment most likely to bring the child to healthy physical, mental, and social maturity. *Id.* In making this determination, we are guided by the factors set forth in Iowa Code section

598.41(3) (2013). *See* Iowa Code § 600B.40; *Phillips v. Davis-Spurling*, 541 N.W.2d 846, 847 (Iowa 1995).

Justin asks us to change the custody decree entered by the district court to grant him physical care of L.S., which he contends is in L.S.'s best interests. His argument focuses on the areas of concern noted by the district court— Syerra's ability to maintain a home, facilitate a relationship with L.S., and communicate with him—as well as Syerra's ability to care for L.S.'s well-being and the half-siblings' relationship.

With regard to L.S.'s physical needs, Justin owns a home whereas Syerra lives with her father, Joey. Justin's home is small with only one-bedroom but was L.S.'s home before the parties separated and is two blocks from her paternal grandmother; Joey's home is larger, with five bedrooms, and is shared with Joey's two teenage sons. Concerns were raised about the state of Justin's home while the parties lived together, but the evidence shows Justin has since made repairs to the home and his housekeeping is appropriate. Joey testified Syerra is "not the greatest housekeeper," but keeps the house clean by picking things up.

The evidence shows both homes are properly maintained and appropriate for L.S. While the district court expressed some concern about Syerra's housekeeping, there were no concerns about the cleanliness of the house L.S. shared with Syerra at the time of trial.[1]

---

[1] Because we contemplate that Syerra will provide an appropriate home for L.S., any change in her ability to provide such a home may be a basis for a modification action. *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983) (noting custody may be changed if there has been a material and substantial change in circumstances not in the contemplation of the court when the decree was entered that affects the child's best interests).

Justin intimates he is better able to provide for L.S.'s well-being because he has provided her with better medical care. He notes he found a treatment for L.S.'s severe diaper rash, though he admits he failed to inform Syerra of the remedy. He recognized L.S. had a mild case of thrush, for which he sought treatment. Justin also took L.S. to the emergency room after finding she sustained a "goose egg" on her forehead and a laceration on her thumb while in Syerra's care. While he notes that emergency room personnel contacted the Iowa Department of Human Services (DHS) about the injuries as mandatory reporters of suspected abuse, the DHS did not investigate the injuries or make a finding of abuse or neglect.

Justin also argues he is better able to support Syerra's relationship with L.S. Our supreme court has long recognized the need for children to maintain meaningful relationships with both parents. *In re Marriage of Leyda*, 355 N.W.2d 862, 866 (Iowa 1984). Our legislature mandates that, to the extent reasonable, our custody determination should "assure the child the opportunity for the maximum continuing physical and emotional contact with both parents." Iowa Code § 598.41(1). If one parent denies the child the opportunity for maximum continuing contact with the other parent, without just cause, we consider it "a significant factor in determining the proper custody arrangement." *Id.* § 598.41(1)(c).

The district court found that Syerra "repeatedly denied [Justin] visitation with [L.S.]" right after they separated and that this denial of visitation "was without merit." The court went on to note, however, that "it appears the initial problems with visitation have been resolved." The record supports this finding. The

evidence shows that Syerra refused Justin's requests for visitation at first, but complied with the visitation schedule provided in the June 2013 temporary order. She has also, on occasion, been amenable to changing the visitation schedule at Justin's request. There is still a great deal of tension in the parties' relationship, and Syerra can be short or abrasive in her communications with Justin. However, the evidence does not show the strain that accompanies some of their interpersonal dealings has harmed L.S. or that Syerra is currently interfering with Justin's relationship with L.S.

Finally, Justin complains that the district court relied too heavily on L.S.'s relationship with E.H. in making its determination. "Siblings in dissolution actions should be separated only for compelling reasons." *In re Marriage of Quirk-Edwards*, 509 N.W.2d 476, 480 (Iowa 1993). This principle applies equally to half-siblings like L.S. and E.H. *See id.* There must be good and compelling reasons to separate siblings; separation is justified when it promotes the children's long-term best interests. *In re Marriage of Harris*, 530 N.W.2d 473, 474 (Iowa 1995). We find no good or compelling reason to separate these half-siblings, and after reviewing the totality of the circumstances, we affirm the decree granting Syerra physical care of L.S.

Finally, we consider Syerra's request for appellate attorney fees. Such an award is not a matter of right, but rests within this court's discretion. *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). In determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of

the appeal. *Id.* After considering the parties' relative financial positions, we decline to award attorney fees. Costs of the appeal are assessed to Justin.

**AFFIRMED.**