# IN THE COURT OF APPEALS OF IOWA

No. 14-1998
Filed June 24, 2015

**Upon the Petition of**
**JOSEPH MICHAEL DIAZ,**
        Petitioner-Appellant,

**And Concerning**
**STEPHANIE MICHELLE CHIA,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Polk County, D. J. Stovall, Judge.


        A father appeals from the district court's paternity order establishing custody, visitation, and child support. **AFFIRMED AS MODIFIED AND REMANDED.**


        Kodi A. Brotherson of Becker & Brotherson Law Offices, Sac City, for appellant.

        Constance Peschang Stannard of Johnston, Stannard, Klesner, Burbidge & Fitzgerald, P.L.C., Iowa City, for appellee.


        Considered by Danilson, C.J., and Vaitheswaran and Doyle, JJ.

**DANILSON, C.J.**

Joseph Diaz appeals from the paternity order establishing custody, visitation, and child support entered by the district court. Joseph contends the district court should have granted his request for physical care of the minor child, L.D., because it is in the child's best interests. In the alternative, he contends that if the mother, Stephanie Chia, maintains physical care of L.D., he should be granted extraordinary visitation and his child support payments should be modified to reflect the change in visitation. In response, Stephanie asks that we affirm the district court's order and award her appellate attorney fees.

We find it is in L.D.'s best interests for Stephanie to maintain physical care, and we affirm the district court's physical care provision. Because we find Joseph should be awarded a mid-week visitation with the child, he is entitled to an extraordinary visitation credit towards his child support obligation. Accordingly, we remand to the district court to recalculate Joseph's child support obligation consistent with the parties' current incomes, the adjusted credit for the change in visitation, and any other credits or deductions to which they are entitled. We decline to award appellate attorney fees.

**I. Background Facts and Proceedings.**

Joseph and Stephanie began dating in June 2010. Stephanie and her daughter from a previous relationship, A.C., moved into Joseph's home in September 2011. A.C. was five years old at the time. In January 2012, Joseph and Stephanie had a daughter, L.D. The parties never married.

Both parents shared in the care for L.D., with Stephanie waking L.D. up, feeding her, and taking her to daycare. Joseph usually picked L.D. up from

daycare in the evening and fed her before Stephanie returned home from work. Both parents participated in putting L.D. to bed.

In the fall of 2012, Stephanie began returning home from work later in the evening. Stephanie maintains this was due to mandatory overtime at work. There were also times when Joseph was required to work overtime or work a shift other than first shift. During this time period, both parties missed evenings with L.D., but the parties continued to share the responsibility of caring for her.

By January 2013, Stephanie had begun an amorous relationship with her coworker, Mitch McLaughlin. Stephanie began attending more after-work functions, and her relationship with Joseph deteriorated.

Joseph confronted Stephanie about her relationship with Mitch sometime in February 2013. During one confrontation, both parties' mothers came to the house. Stephanie's mother called the police to prevent Joseph from forcing Stephanie from the home. Stephanie admits that she spoke loudly and used profanity during the confrontation while both A.C. and L.D. were in the home in another room.

In early April, Joseph served Stephanie with an eviction notice. Joseph also filed a petition for relief from domestic abuse in April 2013. Stephanie moved to her mother's home.

On April 12, 2013, Joseph filed a petition to establish custody, visitation and child support.

On July 29, 2013, the parties entered a stipulated agreement on temporary matters, which provided Joseph with physical care of L.D. and

awarded Stephanie visitation.[1] As part of the order on temporary matters, both parties agreed to provide drug testing results. Stephanie provided her results, which were "negative" to drugs. Joseph was never tested and never provided results.[2]

The matter proceeded to trial July 7–9, 2014. At the time of trial, Stephanie had recently given birth to Mitch McLaughlin's son and was engaged to marry Mitch. The couple had recently purchased a four-bedroom home in Ankeny. Stephanie was on maternity leave from her job at Wells Fargo where she earned over twenty-four dollars per hour. She testified she was considering opening an in-home daycare instead of returning to her position at Wells Fargo. At the time of trial, she was in the process of getting certified by the State of Iowa as a daycare provider. Stephanie testified she expected to make less money if she did switch jobs, but she believed the time she would have with her children would be worth the decrease in pay.

At the time of trial, Joseph was working full-time as a union-waged floor installer and earned twenty-four dollars "and change" per hour. He continued to live in his home in Des Moines. In spite of Stephanie's negative drug test, Joseph continued to speculate that Stephanie was abusing marijuana, cocaine, and methamphetamine. Joseph was asked about an answer he provided in his deposition, when he stated that Stephanie had never physically abused him. He testified that she had never punched or slapped him, but clarified that she had

---

[1] Stephanie testified that she felt compelled to accept the temporary agreement so Joseph would drop his claim regarding domestic abuse.
[2] At trial, Joseph testified that he had attempted to get tested one time but was told that his hair was too short to do so when he arrived at the testing facility.

yelled at him and had pushed him one time. He testified he agreed to dismiss the domestic abuse case if Stephanie agreed to let him have temporary physical care of L.D. during the pendency of the action. Joseph testified he had not seen Stephanie's oldest daughter since she and Stephanie moved out of the home in April 2013.

On July 30, 2014, the district court filed the paternity order establishing custody, visitation, and child support. The court found, in part:

> Joe had received primary physical custody of the minor child according to the parties' negotiated order on temporary matters. Yet he consistently placed his need to be angry at Stephanie above his requirement that he foster the relationship between mother and child.
> . . . .
> Joe has already shown a pattern of keeping [L.D.] from her half-sibling. And if left to his druthers, the evidence shows that such a pattern would continue and this would be even more detrimental to [L.D.] since she now has a relationship with another-sibling, a relationship that also needs to be nurtured.
> . . . . [G]iven the full story of the situation that existed between the parties, the Court is confident Joe's alleged concern of being "fearful" of Stephanie doing physical harm to him was conjured up and obviously a subterfuge in order to gain physical care of the minor child.
> Equally important is Joe's evidence relating to Stephanie's alleged abuse of drugs. Other than her use of alcohol, Joe has no credible evidence supporting his allegation that Stephanie uses marijuana, cocaine, or methamphetamine. Even he testified that his conclusion in this regard is based on speculation.

The court awarded joint legal custody of L.D. with Stephanie receiving physical care and Joseph receiving liberal visitation. Based on his 2012 tax returns showing net earnings of $28,301, Joseph was ordered to pay $547.36 per month in child support.

Joseph appeals.

**II. Standard of Review.**

We review custody decisions de novo. *In re Marriage of Olson*, 705 N.W.2d 312, 313 (Iowa 2005). We give weight to the district court's findings, especially regarding the credibility of witnesses, but are not bound by them. Iowa R. App. P. 6.904(3)(g). "Precedent is of little value as our determination must depend on the facts of the particular case." *In re Marriage of White*, 537 N.W.2d 744, 746 (Iowa 1995).

**III. Discussion.**

Joseph contends the district court should have granted his request for physical care of the minor child, L.D., because it is in the child's best interests. In the alternative, he contends that if Stephanie maintains physical care of L.D., he should be granted extraordinary visitation and his child support payments should be modified to reflect the change in visitation. In response, Stephanie asks that we affirm the district court's order and award her appellate attorney fees.

**A. Physical Care.**

The criteria governing custody decisions are the same whether the parents are dissolving their marriage or, as here, are unwed. *See Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988). The controlling consideration is the best interests of the child. Iowa R. App. P. 6.904(3)(o). In making our determination, gender is irrelevant, and neither parent has a "greater burden than the other in attempting to gain custody." *In re Marriage of Bowen*, 219 N.W.2d 683, 689 (Iowa 1974). We use the factors enumerated in Iowa Code section 598.41(3) (2013) and *In re Marriage of Winter,* 223 N.W.2d 165, 166–67 (Iowa 1974), to determine which of the two parents is most likely to provide an environment that

brings the child to health, both physically and mentally, and to social maturity.[3] *See In re Marriage of Hansen,* 733 N.W.2d 683, 695–96 (Iowa 2007).

Joseph maintains he was L.D.'s primary caregiver since the fall of 2012, when he believes Stephanie began putting her new relationship with Mitch before caring for the couple's daughter. He believes that the approximation factor weighs in his favor. He also maintains the court should have placed more emphasis on L.D.'s stability and the continuity of care because L.D. was only two and a half years old at trial and had been in Joseph's physical care since the temporary order was entered in July 2013.

We do consider the factors of continuity, stability, and approximation. *See id.* at 700 ("Once it is decided that joint physical care is not in the best interest of the [child], the court must next choose which caregiver should be awarded physical care. . . . In making this decision, the factors of continuity, stability, and approximation are entitled to considerable weight."). However, we believe Joseph and Stephanie shared the care of L.D. while the parties were living together. Moreover, we agree with the district court's finding that Joseph engaged in "subterfuge to gain physical care of the minor child" during the pendency of the case. This weighs against Joseph's claim that he should be awarded physical care of L.D. *See* Iowa Code § 598.41(1)(c) ("The court shall consider the denial by one parent of the child's opportunity for maximum contact with the other parent, without just case, a significant factor in determining the

---

[3] Stephanie requested the district court consider awarding joint physical care, but the district court found "[t]hat shared care is not in the best interests of the minor child in light of the degree of acrimony which currently exists between the parties." Stephanie does not appeal the district court's decision, and Joseph does not contest the district court's finding that joint physical care is inappropriate.

proper custody arrangement."); s*ee also In re Marriage of Will*, 489 N.W.2d 394, 399 (Iowa 1992) (applying the consideration to both custody and physical care determinations).

The district court observed that Joseph has "consistently placed his need to be angry at Stephanie above his requirement that he foster the relationship between mother and child." One clear example is Joseph's refusal to answer telephone calls from Stephanie and her daughter A.C. when they attempt to speak to L.D between visits. As a result, Stephanie has had to make arrangements with the daycare providers to arrange a telephone call with L.D.

Although we suspect Joseph's anger will subside over time, the concern relates to L.D.'s relationship with her mother and half-siblings. In obtaining temporary physical care and a temporary protective order, Joseph claimed he was fearful of Stephanie doing physical harm to him. At trial in this action, Joseph claimed Stephanie was using illegal drugs. The district court did not find either claim credible. The district court also found, "Joe has already shown a pattern of keeping [L.D.] from her half-sibling sister. . . . [T]he evidence shows that such a pattern would continue and this would be even more detrimental to [L.D.] since she now has a relationship with another-sibling, a relationship that also needs to be nurtured." Siblings—including half-siblings—in dissolution actions should only be separated for compelling reasons. *In re Marriage of Quirk-Edwards*, 509 N.W.2d 476, 480 (Iowa 1993). Here, we find no compelling reason to overcome the presumption. We also note Stephanie's past actions do not raise similar concerns, and in fact she testified that "we should work

together," in regard to activities the child may participate in, and she would "love" to co-parent with Joseph but it has not been successful to date.

The district court properly considered and discussed all pertinent factors, and the court's findings are supported by the record before us. We also conclude the circumstances identified by the district court outweigh the approximation principle that focuses on historic patterns of caregiving. *See Hansen*, 733 N.W.2d at 695–96 (noting there may be circumstances that outweigh stability, continuity, and approximation in the award of physical care). Giving the appropriate deference to the district court's superior opportunity to observe the witnesses and to assess credibility, we affirm the district court's award of physical care to Stephanie.

**B. Visitation.**

The district court awarded Joseph visitation with L.D. "[e]very other weekend every month, beginning Thursday after school or daycare at 4:00 p.m. until the following Monday morning when school or daycare begins or at 8:00 a.m. when school is not in session." Joseph maintains that, at a minimum, he should be awarded additional visitation on the weeks he does not have weekend visitation from Thursday at 4:00 p.m. until Friday morning at 8:00 a.m. In other words, he requests at least one additional overnight visit every two weeks. He contends this mid-week visitation helps "assure the child the opportunity for maximum continuing physical and emotional contact with both parents." *See* Iowa Code § 598.41(1)(a). As we have stated before, we believe "[v]isitation should include not only weekend time, but time during the week when not disruptive to allow the noncustodial parent the chance to become involved in the

child's day-to-day activity as well as weekend fun." *In re Marriage of Ertmann*, 376 N.W.2d 918, 922 (Iowa Ct. App. 1985). Although she now claims the current visitation is in L.D.'s best interests, in her response to pre-trial interrogatories, Stephanie expressed that she believed a reasonable visitation schedule would be allowing Joseph visitation "two overnight visits during the week and every other weekend." Additionally, at trial she testified that due to what she had learned in the parenting class Children in the Middle, she believed a child should not go more than three days without seeing a parent. We believe awarding Joseph one day of mid-week visitation on weeks he otherwise would not have visitation is in L.D.'s best interests. Moreover, a mid-week overnight is feasible because L.D. still attends the same daycare she attended when Joseph had temporary physical care, and the parents' separate residences are less than thirty minutes apart.

We modify the district court's order to award Joseph visitation from Thursday at 4:00 p.m. to Friday morning when school or daycare begins or at 8:00 a.m. when school is not in session every week he does not have weekend visitation.

**C. Child Support.**

The child support guidelines adopted by the Iowa Supreme Court provide for an "extraordinary visitation credit" if the noncustodial parent's court-ordered visitation exceeds 127 days per year. Iowa Ct. R. 9.9. For the purpose of this credit, "days" means overnights spent caring for the child. *Id.* Because the modified visitation schedule exceeds 127 days, we remand to the district court to reconsider Joseph's support obligation with the appropriate extraordinary

visitation credit. On remand, the district court is to modify the obligation "based on the present financial circumstances of the parties and the child support guidelines."[4]  *See In re Marriage of Hoffman*, ___ N.W. 2d ___, 2015 WL 2137550, at *10 (Iowa 2015).

**D. Attorney Fees.**

Stephanie seeks an award of appellate attorney fees. Appellate attorney fees are not a matter of right, but rather rest in the appellate court's discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). We consider the needs of the party seeking an award, the ability of the other party to pay, and the relative merits of the appeal. *Id.* In a custody proceeding between parents who have never married, the court may award the prevailing party reasonable attorney fees. Iowa Code § 600B.26. Here, Joseph was unsuccessful in his claim for physical care, but has prevailed on his issue for extraordinary visitation and recalculation of child support. At the time of trial, it appears both parties were earning approximately $50,000. Taking these matters into consideration, we decline to award appellate attorney fees.

**IV. Conclusion.**

The district court's paternity order is affirmed as modified. Because we find it is in L.D.'s best interests for Stephanie to maintain physical care, we affirm the district court's physical care provision. Because we find Joseph should be awarded extraordinary visitation, we modify the order to provide that Joseph shall

---

[4] We note that the district court found that Joseph worked full-time and earned "$24 an hour" but appeared to use his past tax returns that showed a net income of only $28,301. The district court shall also consider whether Stephanie is entitled to two qualified dependent deductions and a deduction for health insurance and if Joseph is entitled to a deduction for union dues.

be entitled to visitation on the Thursday preceding the weekend he does not have court-ordered visitation. We remand to the district court to recalculate Joseph's child support obligation consistent with the parties' current incomes, the extraordinary visitation credit, and any other credits and deductions to which they are entitled. We decline to award appellate attorney fees. Costs on appeal shall be split equally between the parties.

**AFFIRMED AS MODIFIED AND REMANDED.**