# IN THE COURT OF APPEALS OF IOWA

No. 15-1930
Filed May 11, 2016

**BRAYDEN J. FLICK,**
    Plaintiff-Appellee,

**vs.**

**LINDSEY R. STONEBURNER n/k/a LINDSEY R. HEMAN,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Mary Pat Gunderson, Judge.

Mother appeals from an order establishing custody, paternity, visitation, and support. **AFFIRMED.**

Andrew B. Howie of Hudson, Mallaney, Shindler & Anderson, P.C., West Des Moines, for appellant.

William P. Baresel of Prichard Law Office, P.C., Charles City, for appellee.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

Lindsey and Brayden are the never-married parents of P.F., who was born in 2013. Lindsey appeals from an order establishing custody, paternity, visitation, and support.

I.

Lindsey and Brayden met in the fall of 2010. Lindsey moved into Brayden's residence shortly after the parties met. Brayden testified the relationship was hostile and described Lindsey as "very angry." When Lindsey did not get her way, she started a physical altercation. Brayden stated their conflicts turned physical two to three times per week. The evidence showed Lindsey was the aggressor. The parties' relationship lasted for approximately one year. The relationship ended shortly after Lindsey found out she was pregnant. At that time, Lindsey moved out and moved in with her mother.

P.F. was born in April 2013. When P.F. was born, Lindsey told Brayden he was not the father. Brayden obtained a private paternity test to establish paternity. After the child's birth, the parties decided they wanted to repair their relationship for the sake of the child. Lindsey moved in with Brayden in the summer of 2013. The reconciliation was short lived. In December 2013, the parties got into another argument. Brayden recalled Lindsey throwing items at him and putting holes in the walls. Brayden contacted the police and asked them to facilitate Lindsey's move from the residence.

In January 2014, Brayden filed his petition to establish paternity, custody, and care of P.F. The district court awarded the parties joint legal custody of P.F.,

awarded Brayden physical care of P.F. and the corresponding tax exemption, and awarded Lindsey liberal visitation.

II.

Our review is de novo. *See* Iowa R. App P. 6.907; *Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988). We review the entire record and decide anew the factual and legal issues presented. *See In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Prior cases have little precedential value; the court must make its determination based on the unique facts and circumstances of each case. *See In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995); *In re Marriage of Snowden*, No. 14–1920, 2015 WL 4233449, at *1 (Iowa Ct. App. July 9, 2015) ("All happy families are alike; each unhappy family is unhappy in its own way." (quoting Leo Tolstoy, *Anna Karenina* 1 (1873))). "We give weight to the fact findings of the trial court, especially when considering the credibility of the witnesses, but we are not bound by them." *Williams*, 589 N.W.2d at 761.

III.

A.

Lindsey appeals the district court's order granting Brayden physical care of P.F. The criteria used in making the physical care determination are the same for married and unmarried parents. *See Lambert*, 418 N.W.2d at 42. Physical care is defined as "the right and responsibility to maintain a home for the minor child and provide for the routine care of the child." Iowa Code § 598.1(7) (2013). Our court looks to the factors set forth in Iowa Code section 598.41(3) and our case law when determining primary physical care. *See In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974). When determining primary physical care,

the overriding consideration is the best interests of the child. *See McKee v. Dicus*, 785 N.W.2d 733, 736 (Iowa Ct. App. 2010). The objective is always "to place the child in the environment most likely to bring that child to healthy physical, mental and social maturity." *In re Marriage of Kunkel*, 555 N.W.2d 250, 253 (Iowa Ct. App. 1996). "In so far as is reasonable and in the best interest of the child, the court should make an award of custody which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents and which will encourage the parents to share the rights and responsibilities of raising the child." *Id.* (citing Iowa Code § 598.41(1) (1995)).

Brayden is twenty-seven years old. He has some post-secondary education. He is employed full-time. He has appropriate housing for raising a child, living in a three-bedroom, two-bathroom home. Brayden resides with his girlfriend Jessica Cox. Jessica is employed full-time as a lead mental health instructor. Previously, Jessica worked in child care centers for five years. At the time of trial, Brayden was current in his child support. He has no criminal history other than traffic violations.

Lindsey is twenty-five years of age. She has some post-secondary education. She participated in extensive mental health services as a child, adolescent, and younger adult, including residential treatment for eight months. At the age of nineteen or twenty, Lindsey attempted suicide and outpatient treatment was recommended. It appears that Lindsey has not participated in mental health treatment for four or five years. Her driver's license has been suspended due to non-payment of fines. Lindsey lives with her husband, Zachary Heman, and two sons, one being P.F., in a three-bedroom apartment.

Lindsey is pregnant with another child and not employed. Zachary works as a certified nurse assistant.

Lindsey contends she should retain physical care of the child because that approximates the parties' past child-rearing practice. Although our court recognizes greater primary care experience as a factor to be considered, it is not dispositive. *See, e.g.*, *Hovey v. Davis*, No. 15-0408, 2015 WL 5996934, at *3, *5 (Iowa Ct. App. Oct. 14, 2015) (affirming primary physical care award granted to father when he was not historically the primary caregiver); *Kunkel*, 555 N.W.2d at 253-54 (awarding the father physical care when he was not historically the primary caregiver); *In re Marriage of Roberts*, 545 N.W.2d 340, 343 (Iowa Ct. App. 1996) ("Although certainly not controlling, due consideration should be given to the fact Lisa has been the historical primary care giver during the marriage."); *In re Marriage of Toedter*, 473 N.W.2d 233, 234 (Iowa Ct. App. 1991) (affirming physical care award to father despite the mother's previous role as the primary caretaker).

Lindsey contends the district court ignored the custody evaluator's recommendation that she be awarded care of the child. We first note the custody evaluation was only, and could only be, a recommendation and not binding on the district court. *See In re Marriage of Avenarius*, No. 02-0698, 2003 WL 118535, at *3 (Iowa Ct. App. Jan. 15, 2003) (noting "the child custody evaluation is simply a recommendation to the district court and is not binding on the court"). Second, there is no indication the district court ignored the evaluator's recommendation. It is clear the district court considered all relevant evidence in

making an independent determination of what was in the best interest of the child.

We address the factors that militate in favor of awarding Brayden physical care. One significant factor supporting the award in favor of Brayden is Lindsey's unwillingness to support Brayden's visitation with the child. In considering, what is in the child's best interest, we "must consider the willingness of each party to allow the child access to the other party." *Kunkel*, 555 N.W.2d at 253. Lindsey admitted she unilaterally cut off visitation between Brayden and P.F in violation of a temporary court order. Lindsey appears to have cutoff visitation in retaliation for Brayden insisting on exchanging care at the agreed-upon neutral site rather than Lindsey's home. She refused to come to the neutral site and instead called the police and reported Brayden kidnapped the child. The police investigated the matter and determined the child was not kidnapped. She denied visitation for several months after this incident while this case was pending. Later on, Lindsey unilaterally decided that Brayden could have visitation with P.F. only if supervised. The first time Lindsey allowed visitation was for a custody evaluation conducted for this case. The district court found when Lindsey was asked at trial about denying Brayden access her response was "cavalier." Lindsey also testified that she would allow visitation only if the court ordered it. "The court shall consider the denial by one parent of the child's opportunity for maximum continuing contact with the other parent, without just cause, a significant factor in determining the proper custody arrangement." Iowa Code § 598.41(1)(c); *see also In re Marriage of Quirk-Edwards*, 509 N.W.2d 476, 480 (Iowa 1993) ("If visitation rights of the noncustodial parent are jeopardized by the conduct of the

custodial parent, such acts could provide an adequate ground for a change of custody.").

A second factor supporting the award in favor of Brayden is Lindsey's general unwillingness to communicate with Brayden and, when communicating, inability to communicate in a non-hostile way. Lindsey's lack of communication and hostile communication negatively affect the child. *See In re Marriage of Berns*, No. 13-0013, 2013 WL 4009678, at *3 (Iowa Ct. App. Aug. 7, 2013) ("The parties' inability to communicate alone is not enough, there must be a showing that the lack of communication affects the welfare of the child or that the child will have superior care if physical care is granted to just one parent."). Lindsey has not involved Brayden in the child's health care, failing to tell Brayden about medical appointments. Brayden testified that since he started dating Jessica, his conversations with Lindsey have become more controlling and harassing. At the parties' second mediation, Lindsey said Jessica had to leave or she would not proceed with the mediation. Brayden testified Lindsey sent Jessica harassing text messages calling her names, telling her to stay away from P.F., and threatening Jessica. In addition to the lack of constructive communication, we also note Lindsey's surreptitious activity. Lindsey created or adopted a false identity on Facebook and used the identity to monitor Brayden and Jessica's activities. She acknowledged her conduct at trial. She thought it was justified because she learned information to use in the custody dispute. It is clear that Lindsey cannot be supportive of Brayden's relationship with the child.

The most significant factor is Lindsey's history of domestic abuse and violence toward Brayden. *See In re Marriage of Daniels*, 568 N.W.2d 51, 54

(Iowa Ct. App. 1997). "This stems from the ravaging and long-term consequences of domestic abuse on children." *Id.* at 54-55. As our court has stated:

> A child who grows up in a home plagued with battering can, in many significant ways, be scarred for life. Thus, spousal abuse discloses a serious character flaw in the batterer, and an equally serious flaw in parenting. It also constitutes a crime. *See* Iowa Code § 708.2A. Consequently, we believe evidence of untreated domestic battering should be given considerable weight in determining the primary caretaker, and under some circumstances even foreclose an award of primary care to a spouse who batters. Domestic abuse is, in every respect, dramatically opposed to a child's best interests.

*Id.* at 55 (footnote omitted). Further, a "finding by the court that a history of domestic abuse exists, as specified in subsection 3, paragraph 'j', which is not rebutted, shall outweigh consideration of any other factor specified in subsection 3 in the determination of the awarding of custody under this subsection." Iowa Code § 598.41(2)(c).

In this case, even after Lindsey moved out of Brayden's home, the parties had physical altercations. In March 2013, Lindsey and Brayden were in the process of switching cell phone service to Lindsey because Brayden refused to pay for it anymore. The two were at a retail store in the mall, and the employees told Lindsey they could not transfer the phone into her name. Instead, the employees stated, Lindsey would have to go to the cell phone carrier's store. Lindsey told Brayden he needed to drive her to the cell phone carrier's store. Brayden told Lindsey she was not allowed in his vehicle. In response, Lindsey blocked him from his vehicle. Brayden decided to walk away, and Lindsey ran

after him. Lindsey grabbed him by the shirt, tore his shirt off, and hit him in the face multiple times. The police were called, and Lindsey was arrested.

In December 2013, Lindsey again assaulted Brayden. Brayden walked into a downtown bar. Lindsey walked up to Brayden and struck him in the face several times. The police were called, but Lindsey fled the scene. The police found Lindsey later than night. She was intoxicated. She also had another altercation the same night with a different person. She was arrested and held at the Polk County jail for four days. Brayden cared for P.F. during that time.

Lindsey argues that the domestic violence between the two was mutual and that both were the aggressor on occasion. The argument is unavailing. Lindsey was the aggressor. Lindsey has been twice convicted of domestic abuse assault against Brayden. Brayden has no domestic abuse convictions.

Lindsey argues she should be awarded physical care of P.F. because there is a preference not to separate siblings, including half-siblings. *See In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986). The presumption that siblings should reside together may only be overcome if their separation "may better promote the long-range interests of children." *See id.* We conclude Lindsey's unilateral decision to suspend visitation with the father, the parties' inability to communicate, and the history of domestic violence overcome the strong presumption that siblings should not be separated.

Like the district court, we find awarding physical care of P.F. to Brayden is in the best interests of the child. Brayden has an appropriate residence and steady employment and is the one "most likely to bring that child to healthy physical, mental and social maturity." *Kunkel*, 555 N.W.2d at 253. Further,

Brayden is more likely than Lindsey to be supportive of P.F.'s relationship with the other parent rather than vice versa as demonstrated by Lindsey's decision to deny visitation without cause and unwillingness and inability to communicate regarding the child. Finally, Lindsey's history of physical violence strongly militates against an award of physical care to her.

B.

Lindsey argues the district court erred in awarding Brayden the sole right to claim P.F. as a dependent for tax purposes. The district court stated Brayden "shall be entitled to claim P.F. as a dependent and exemption in each tax year." "The general rule is that the parent given primary physical care of the child is entitled to claim the child as a tax exemption." *In re Marriage of Okland*, 699 N.W.2d 260, 269 (Iowa 2005). The court has the "authority to award tax exemptions to the noncustodial parent to achieve an equitable resolution of the economic issues presented." *Id.* The court can also cause inequity when the court allows an exemption to stay with the parent who will benefit the least from it. *Id.* On de novo review, we find the exemption should stay with Brayden. There is no evidence she would benefit more from the exemption than Brayden.

IV.

For the foregoing reasons, we affirm the judgment of the district court. Lindsey and Brayden both seek an award of appellate attorney fees. We have the discretion to make an award of appellate attorney fees. *See In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007) (citing *In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997)). The court will "consider the needs of the party making the request, the ability of the other party to pay, and whether

the party was required to defend the district court's decision on appeal." *Id.*

Each party shall be responsible for their respective attorney's fees.

**AFFIRMED.**