**IN THE COURT OF APPEALS OF IOWA**

No. 21-1016
Filed January 27, 2022

**IN RE THE MARRIAGE OF NATASHA MARIE JENSEN
AND STEVEN KAI JENSEN**

**Upon the Petition of
NATASHA MARIE JENSEN, n/k/a NATASHA MARIE LASH,**
        Petitioner-Appellant,

**And Concerning
STEVEN KAI JENSEN,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Black Hawk County, Bradley J.

Harris, Judge.

        Following trial on competing claims for modification of an original divorce

decree, Natasha Lash appeals a district court ruling that awarded her ex-husband,

Steven Jensen, physical care of their child.  **AFFIRMED.**

        Anne K. Wilson and Thomas J. Viner of Viner Law Firm, P.C., Cedar Rapids,

for appellant.

        Kevin D. Engels of Correll, Sheerer, Benson, Engels, Galles & Demro, PLC,

Cedar Falls, for appellee.

        Considered by Greer, P.J., and Schumacher and Ahlers, JJ.

**SCHUMACHER, Judge.**

Natasha Lash, formerly known as Natasha Jensen, appeals a district court order awarding her ex-husband, Steven Jensen, physical care of their child. Both parties request appellate attorney fees. Upon our de novo review, we affirm the award of physical care to Jensen. We decline to award appellate attorney fees.

## I.    Background Facts & Proceedings

Lash and Jensen were divorced in 2016 pursuant to a decree that adopted a stipulation for joint legal custody and joint physical care of their daughter, C.M.J., born in 2015. At the time of the divorce, the parties were residing in Waterloo. Jensen moved out of the marital home and moved to his mother's house in Cedar Falls, while Lash remained in the marital home. The parties quickly abandoned the terms of the stipulation. Jensen became the parent primarily responsible for C.M.J.'s daily care. Lash's visits were initially sporadic but eventually settled into visitation every other weekend.

Lash moved into a condominium in Waterloo in 2018. Jensen moved back into the former marital home. He was joined by Heather, whom he married in 2019. Jensen and Heather share two children together, C.M.J.'s half-siblings, born in 2018 and 2020. Jensen, his wife, and the three children moved to Elk Run Heights—just outside of Waterloo—in 2020. Jensen remains employed in logistics and transportation. In 2019, Lash moved to Cedar Rapids, mainly to live with her significant other. At the time of the modification trial, the parties lived roughly forty miles apart. Lash was pursuing a master's degree in nursing, with a target graduation date of December 2021. She was not employed, with her last

employment being in 2020. Lash was terminated from this most recent employment.

Since the entry of the original decree, C.M.J. lived predominately with Jensen. Before C.M.J. started kindergarten, Lash would care for C.M.J. Thursday evening until Monday morning every other week. That schedule was modified slightly when C.M.J. started kindergarten, modifying Lash's time to Friday evening to Monday morning every other weekend. The parties kept this schedule except for a brief experiment with longer periods of custody at the start of the COVID-19 pandemic.[1] C.M.J. now attends school in the district of her father's residence.

C.M.J. is a well-adjusted and bright child. All parties agree she excels in school and is generally outgoing and well-behaved. She has a close bond with her half-siblings. C.M.J. experienced some difficulties in 2019 due to a situation in Lash's life. Those concerns were resolved after Jensen sought counseling for C.M.J. Both parties have extended family in the area who share a close relationship with C.M.J. The parties generally get along and are able to communicate effectively about C.M.J.

Because of problems largely stemming from the distance between the parties, Jensen filed a petition to modify the dissolution decree, requesting physical care of C.M.J. Lash filed an answer and counterclaimed for physical care. Both parties stipulated to a substantial and material change in circumstances. Based

---

[1] That schedule had each party care for C.M.J. for thirty to forty consecutive days. Each party had custody of C.M.J. once for such a period before they abandoned the plan. C.M.J.'s schooling was conducted virtually during this time period, again related to the pandemic.

principally on Jensen's history as the primary caregiver to C.M.J., the court awarded him physical care. Lash appeals.

## II. Standard of Review

"Petitions to modify the physical care provisions of a divorce decree lie in equity." *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). Thus, our review is de novo. *Id.* "We give weight to the findings of the district court, particularly concerning the credibility of witnesses; however, those findings are not binding upon us." *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). As always, our primary concern is the best interest of the child. Iowa R. App. P. 6.904(3)(o).

## III. Discussion

Lash appeals the district court ruling modifying physical care of C.M.J. She contends she can render superior care to their child and should have been awarded physical care of C.M.J. Both parties request appellate attorney fees.

One of the most significant modifications made in family law is the change of physical care. *See In re Marriage of Thielges*, 623 N.W.2d 232, 236 (Iowa Ct. App. 2000). The parent requesting the modification must prove, by a preponderance of the evidence, there is a substantial and material change in circumstances. *See Hoffman*, 867 N.W.2d at 32. The circumstances that have changed "must not have been contemplated by the court" and "must be more or less permanent, not temporary." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983); *see also Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). The parent requesting modification must show the circumstances relate to the welfare of the child and "prove an ability to minister more effectively to the child's

well being." *Hoffman*, 867 N.W.2d at 32. "The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons." *Frederici*, 338 N.W.2d at 158. Here, both parties agree the physical distance caused by Lash's move to Cedar Rapids is a substantial and material change. Because the parties stipulated to a change in circumstances, we do not address whether a separation of approximately forty miles equates to a substantial and material change in circumstances under current case law.

The party seeking modification must "prove an ability to minister more effectively to the children's well-being." *Id.* Where, as here, the parties have shared joint physical care, the question "is which parent can render 'better' care." *In re Marriage of Eggeling*, No. 18-0234, 2019 WL 478818, at *2 (Iowa Ct. App. Feb. 6, 2019) (quoting *Melchiori*, 644 N.W.2d at 368-69). In making this decision, courts are guided by the factors in Iowa Code section 598.41(3) (2021) and the nonexclusive factors in *In re Marriage of Winters*, 223 N.W.2d 165, 166-67 (Iowa 1974). We seek "to place the children in an environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

Multiple factors support the district court's conclusion that Jensen can provide better care. First, Jensen has been the primary caregiver since the dissolution due to the parties' abandonment of the joint physical care arrangement. Lash predominately only cared for C.M.J. every other weekend, along with about a month of care at the beginning of the COVID-19 pandemic. In contrast, Jensen, along with his wife, took care of C.M.J. most weekdays and every other weekend.

Both parties agree that C.M.J. has thrived under this arrangement. *See id.* at 697 ("[T]he successful caregiving by one spouse in the past is a strong predictor that future care of the [child] will be of the same quality."). Additionally, our courts have recognized that removing a child from their primary caregiver can cause instability, damaging their emotional well-being. *See id.* at 696-97; *In re Marriage of Lydolf*, No. 20-0679, 2021 WL 2453050, at *4 (Iowa Ct. App. June 16, 2021) ("[K]eeping [children] close to their primary caregiver is the 'least disruptive emotionally' to the children." (citation omitted)).

At the time of trial, Jensen was the more stable parent. *See Winters*, 223 N.W.2d at 166. "In custody modification cases, stability is the trump card." *Thorpe v. Hostetler*, 949 N.W.2d 1, 7 (Iowa Ct. App. 2020). Jensen has been steadily employed and has an established routine with C.M.J. On the other hand, at the time of trial Lash was unemployed and seeking to finish a master's degree. She had not arranged employment for after graduation. Issues in her personal life had caused difficulties for C.M.J. since the entry of the original decree. And awarding physical care to Lash would require C.M.J. to change schools. C.M.J. has attended preschool and kindergarten in the school district near her father's home. Both parties acknowledge she has excelled in this educational environment.

Additionally, C.M.J.'s bond with her half-siblings favors Jensen receiving physical care. "There is a presumption that siblings should not be separated." *In re Marriage of Will*, 489 N.W.2d 394, 398 (Iowa 1992). This presumption extends to half-siblings as well. *See In re Marriage of Quirk-Edwards*, 509 N.W.2d 476, 480 (Iowa 1993). It was uncontroverted at trial that C.M.J. shares a close bond with her half-siblings. While this is a modification action, due to Jensen being the

primary caregiver of C.M.J. by agreement of the parties, C.M.J. has lived with her half-siblings on a full-time basis, separated only during Lash's visitation times. Separating her from them is not in her best interest.

Lash bases her claim of superior parenting primarily on the fact that she resides in what she considers a better school district, one that would adequately challenge C.M.J. academically. However, the relative merits of a school district is not an outcome determinative factor in our analysis. This court recently stated, "The best interest of the child . . . does not necessarily hinge on perceived comparable merits of the schools at issue." *In re Marriage of Flick*, No. 20-1535, 2021 WL 2453111, at *5 (Iowa Ct. App. June 16, 2021). Moreover, our supreme court has noted the inadequacies of sources similar to that relied on by Lash to establish her school district's superiority. *See Hoffman*, 867 N.W.2d at 35-36 (noting the "conclusion that one district was superior to the other is not sound" because the data did not account for factors such as socio-economic differences, differences between urban and rural districts, or instructional experiences, among others).[2] Given the other factors already discussed, the perceived strength of Lash's school district is insufficient to warrant awarding her physical care of C.M.J.

Both parties request appellate attorney fees. Appellate attorney fees are available to the prevailing party. *See Hensch v. Mysak*, 902 N.W.2d 822, 827 (Iowa Ct. App. 2017); *see also* Iowa Code § 598.36 "In determining whether to award appellate attorney fees, we consider the needs of the party making the

---

[2] The sources Lash relies on in this case are similar to that in *Hoffman*, ranking schools based on factors like graduation rate, school funding, student-teacher ratio, and standardized test scores.

request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *In re Marriage of Hoffman*, 891 N.W.2d 849, 852 (Iowa Ct. App. 2016) (citation omitted). Having considered these factors, we decline to award appellate attorney fees.

**AFFIRMED.**