### In re the MARRIAGE OF Angie J. KUNKEL and Dewey L. Kunkel.

**Upon the Petition of**

**Angie J. Kunkel, Appellee/Cross–Appellant,**

**And Concerning**

**Dewey L. Kunkel, Appellant/Cross–Appellee.**

**No. 95–953.**

Court of Appeals of Iowa.

Aug. 30, 1996.

---

James C. Ellefson of Harrison, Brennecke, Moore, Smaha & McKibben, Marshalltown, for appellee/cross–appellant.

Richard E.H. Phelps II, Des Moines, for appellant/cross–appellee.

Considered by SACKETT, C.J., and HABHAB and HUITINK, JJ.

HUITINK, Judge.

Dewey L. Kunkel appeals the custodial provisions of the decree dissolving his marriage to Angie Kunkel. We affirm the decree as modified and remand for further proceedings.

Dewey and Angie were married in September 1992. They have one child, Brandon, born on March 5, 1993.

Angie was twenty-two years old at the time of trial. She is a high school graduate and has completed one year of clerical studies at AIB in Des Moines. Her employment experience includes work as a daycare provider, and she was working at Younkers Warehouse in Ankeny as of the trial date. Her net monthly income is $824.

Dewey was thirty-three years old at the time this case was tried. After graduation from high school, Dewey attended Iowa Central College earning a degree in carpentry. Dewey works as a union carpenter in Des Moines. His net monthly income is $1,929. Dewey and Angie were both raised in the Baxter, Iowa area and have lived in Baxter since they were married. Both have extended family living in or near Baxter.

Angie and Dewey shared Brandon's custody and physical care for alternating two week periods during the time this case was pending. The record indicates this arrangement worked "reasonably well with no conflicts or serious incidents."

The district court ordered a home study at Dewey's request. The "custody study report" assessed Dewey and Angie's respective custodial capability. This report included the following conclusions:

There is a consistent pattern of reporting control problems regarding temperament and actions on the part of the mother. These reports are varied as to context and source but are consistent as to description and content. They come from a variety of persons, some of whom might be expected to be "in her corner." They are buttressed and made credible by the founded child abuse allegations.

The report also states:

Dewey by all accounts and by his history is a person of stability and dependability.

He has extensive family support. He has demonstrated and verbalized willingness to be supportive of Brandon's relationship with the mother and would be supportive of visitation with the maternal grandparents.

The report recommended Brandon be placed with Dewey.

The founded child abuse report refers to a 1994 incident involving Angie and a 15–month–old child entrusted to her care. A child abuse investigation by the Department of Human Services implicated Angie as the person responsible for bruises found on the child's buttocks. Angie denies physically abusing this or any other child.

Angie also submitted a favorable home study report prepared by another custody evaluator. This report was, however, excluded from the trial because it was not timely submitted pursuant to the terms of a pretrial order.

The district court found that both parents were capable of providing physical care for Brandon. The decree includes the following assessment of the parties by the district court:

Angie's personality is abrasive and argumentative when she tries to make a point or state a fact. She has been very judgmental of Dewey and his family. She is negative in her assessment of Dewey. Dewey's assessment of Angie has been quite generous and complimentary.

The district court also found:

The parents' backgrounds are somewhat different in that Dewey is probably the more stable of the two when reacting to situations and other persons. Angie has a tendency to be abrasive and argumentative in responding to questions, and she is somewhat immature in her expectations.

Concerning Dewey, the district court stated:

Dewey is committed to Brandon and Dewey will probably put Brandon number one in his life, but the court does not find this would be in Brandon's best interest. Angie has other romantic interests and the court does not know if Brandon would

always come out first in these relationships.

The district court awarded Brandon's physical care to Angie. The court reasoned that:

Angie has been the primary care giver of Brandon since his birth. Based upon that factor and that factor alone, physical custody of Brandon should be in Angie.

On appeal Dewey contends the district court's physical care award conflicts with its own findings. He also argues the district court ignored the recommendation made by the custody evaluator. Angie cross appeals citing the district court's exclusion of the home study she submitted.

Our review in this case is de novo. Iowa R.App. P. 4. Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983). We give weight to the trial court's findings of fact, but we are not bound by them. Iowa R.App. P. 14(f)(7).

The critical issue is not which parent possesses the greater right to the child, rather the controlling consideration must be the best interest of the child. *Heyer v. Peterson*, 307 N.W.2d 1, 7 (Iowa 1981). This decision requires selection of a custodial parent who can minister more effectively to the long range best interest of the child. The objective should always be to place the child in the environment most likely to bring that child to healthy physical, mental and social maturity. *See In re Marriage of Winter*, 223 N.W.2d 165, 167 (Iowa 1974). The court should also consider the characteristics and needs of the child, the characteristics of the parents, the capacity and desire of each parent to provide for the needs of the child, the relationship of the child with each parent, the nature of each proposed environment and the effect of continuing or changing an existing custodial status. *Id.*

There is no presumption in favor of the mother or the father. *See In re Marriage of Bowen*, 219 N.W.2d 683, 688 (Iowa 1974). Greater primary care experience is one of many factors the court considers but it does not ensure an award of physical care.

*In re Marriage of Wilson*, 532 N.W.2d 493, 495 (Iowa 1995). In so far as is reasonable and in the best interest of the child, the court should make an award of custody which will assure the child the opportunity for the maximum continuing physical and emotional contact with both parents and which will encourage the parents to share the rights and responsibilities of raising the child. *See* Iowa Code § 598.41(1) (1995). To effectuate that policy the court must consider the willingness of each party to allow the child access to the other party. *In re Marriage of Burham*, 283 N.W.2d 269, 276 (Iowa 1979).

Our de novo review of the record confirms the validity of the district court's assessment of the parties maturity and stability. We, like the district court, are convinced that Dewey and Angie are equally capable of providing primary care for Brandon. We are, however, unable to reconcile the district court's physical care award with the evidence of the parties' respective maturity, stability and temperament.

Although Angie's experience as Brandon's primary caretaker is entitled to considerable weight, it, contrary to the district court's conclusion, does not justify awarding her physical care. Successful parenting following a dissolution implicates far more than a parent's ability to attend to the daily details of raising a child. When this favorable custodial attribute is considered in the context of established joint custody principles, it does not necessarily distinguish the more experienced parent as the preferred physical caretaker. The parent awarded physical care must also possess those parental attributes that are consistent with the obligations inherent in a joint custody arrangement. Most notable among these is the ability to set aside understandable resentments and act in the best interest of the child. Although this is most certainly easier said than done, this fundamental requirement nevertheless remains essential to the effective exercise of joint custodial care. Constructive dialogue and cooperation on matters of mutual parental concern are unlikely if the custodial relationship is strained by contentiousness and hostility between the parents.

In this case, Dewey has clearly distinguished himself as the more mature and stable parent. In comparison, we find Angie's contentious disposition and hostile temperament incompatible with the considerable rights and responsibilities attending an award of physical care. The record also indicates Brandon has been subjected to harsh, although less than abusive treatment, when Angie has succumbed to her temperamental impulses. There is also evidence that parenting Brandon is a higher priority for Dewey than it is for Angie. We accordingly modify the district court's decree by awarding Brandon's physical care to Dewey.

In making this determination we acknowledge that we have awarded physical care to the parent with less primary care experience. The fact that Angie will no longer be Brandon's primary caretaker does not necessarily imply he will no longer enjoy the benefits of her parenting experience. Angie, as Brandon's joint custodian has the right to continuing physical and emotional contact with Brandon and is entitled to share the rights and responsibilities of raising him. These rights and responsibilities include matters such as decisions affecting Brandon's legal status, medical care, education, extracurricular activities, and religious instruction. *See* Iowa Code § 598.41(5) (1995); *In re Marriage of Will,* 489 N.W.2d 394, 397 (Iowa 1992).

Our decision to modify the physical care provisions of the decree necessitates the modification of the parties' visitation rights and child support obligations. Since the record suggests that the parties' residential and financial circumstances may have changed since the decree was entered, we remand these issues to the district court. We do not retain jurisdiction.

We have also considered Angie's claim that the district court should have considered her home study report. As noted earlier, the report was excluded because it was not submitted as required by a pretrial order. Iowa Rule of Civil Procedure 138 authorizes the entry of appropriate pretrial orders governing the "subsequent course" of the trial. This includes the inherent authority to enforce these orders by appropriate sanctions. *Rowen v. LeMars Mutual Ins. Co.,* 282 N.W.2d 639, 646 (Iowa 1979). Angie's submission of this report was untimely and the district court acted within its discretion by excluding it.

Lastly, we consider the parties' request for attorney's fees incurred as the result of this appeal. An award for attorney's fees is not a matter of right but rests with the court's discretion and depends on the parties respective financial circumstances and ability to pay. *In re Marriage of Eastman,* 538 N.W.2d, 874, 877 (Iowa App.1995). The record indicates that both parties have the ability to pay their own attorney's fees and accordingly each party shall pay their own attorney's fees. Costs of appeal are to be divided equally. The judgment of the district court is affirmed as modified and this case is remanded for further proceedings consistent with this opinion.

AFFIRMED AS MODIFIED AND REMANDED.

SACKETT, C.J., concurs.

HABHAB, J., dissents.

STREIT, J., takes no part.

HABHAB, Judge, dissenting.

I respectfully dissent. I would affirm the trial court in all respects.