**IN THE COURT OF APPEALS OF IOWA**

No. 4-028 / 13-0566
Filed February 19, 2014

IN RE THE MARRIAGE OF ALICIA R. WILLIAMS
AND JUSTIN WILLIAMS

Upon the Petition of
ALICIA R. WILLIAMS,
        Petitioner-Appellant/Cross-Appellee,

And Concerning
JUSTIN WILLIAMS,
        Respondent-Appellee/Cross-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Carla T. Schemmel,

Judge.


        A wife appeals and a husband cross-appeals the decree dissolving their

marriage raising issues of child custody and property distribution.  **AFFIRMED.**


        Andrew B. Howie of Hudson, Mallaney, Shindler & Anderson, P.C., West

Des Moines, for appellant/cross-appellee.

        Susan L. Ekstrom of Elverson, Vasey & Peterson, Des Moines, for

appellee/cross-appellant.


        Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**VOGEL, P.J.**

Alicia Williams appeals, and Justin Williams cross-appeals, the decree dissolving their marriage. Alicia claims the district court should have given her physical care of the parties' children and should have stricken or disregarded the custody evaluator's report. Justin, on cross-appeal, claims the district court should have awarded him one-half of Alicia's 401(k) account. He also seeks appellate attorney fees in this matter. After our de novo review, we affirm the physical care and property distribution provisions of the district court's decree. We conclude the children's best interests justify placing them in Justin's physical care, and the short-term nature of this marriage along with the rest of the property distribution makes it equitable for Alicia to keep sole possession of her 401(k).

## I. BACKGROUND FACTS AND PROCEEDINGS.

Alicia and Justin were married in December 2009, after finding out they were expecting their first child. Their first son was born in May 2010. After their relationship turned rocky, Alicia filed to dissolve the marriage in March of 2012. A few days after filing, the parties got in a heated altercation, and Alicia called the police. Justin was arrested and charged with domestic abuse and harassment. Justin ultimately entered an *Alford* plea to harassment, and the domestic abuse charge was dropped. The court entered a no-contact order at sentencing.

Alicia also filed for relief from domestic abuse under Iowa Code chapter 236 (2011). After a hearing the court concluded Alicia had not proven that Justin engaged in domestic abuse. Thus, the court dismissed the case.

At the temporary hearing in the dissolution action the court granted the parties joint legal custody of their child and placed physical care with Alicia subject to Justin's visitation. The court set the child support obligation and awarded Alicia possession of the martial home, ordering Justin to contribute toward the mortgage payment. The court also appointed a custody evaluator, Mary Hilliard, at Justin's request. During the pendency of the dissolution proceeding, approximately three weeks before trial, Alicia delivered the parties' second son.

Following a three day trial, the court issued its dissolution decree in March 2013. The court noted there were allegations of domestic abuse made against both parties. The court however found that neither party presented a physical threat to the other at the present time, but rather, each had used these accusations to attempt to bolster their own position in the dissolution action. Both parties had refused to allow the other party to see the oldest child for several weeks during the dissolution proceeding, and both behaved in a manner unproductive to co-parenting. Following the advice of the custody evaluator, the court determined the parties should have joint legal custody, granted Justin physical care, and provided Alicia a liberal amount of visitation, which amounted to fifty percent of the overnights.[1] The court required the parties to engage the

---

[1] Alicia was granted alternating weekly visitation with Week A's schedule being: Sunday at 6 p.m. until Tuesday at 6 p.m. and Friday at 6 p.m. until Sunday at 6 p.m., and Week B's schedule being: Tuesday at 6 p.m. until Friday at 6 p.m. This schedule results in each parent receiving seven overnights with the children every two weeks.

While the parents here had roughly equal time with the children, the court specifically awarded physical care of the children to Justin. Our focus to determine the nature of the physical care arrangement is on the language used by the court and not the number of overnights each parent receives. *See In re Seay*, 746 N.W.2d 833, 835 (Iowa 2008) (determining the off-set method of calculating child support should be

services of a parenting coordinator for the next twelve months and ordered Alicia to pay child support in accordance with the support guidelines.

The court concluded the marital home had no equity and awarded it along with its debt to Alicia. The court ordered Alicia to pay Justin $5000 for his interest in a car she sold during the dissolution proceedings, and it ordered Alicia to pay Justin $2000 for his portion of the 2011 tax refund she received after taking all of the applicable deductions. These payments were to be made in $200 per month installments over the next thirty-five months. Finally, the court awarded each party their own retirement accounts and bank accounts, while assigning each their separate credit card debts, all based on the short-term nature of the marriage.

Both parties appeal.

## II. SCOPE AND STANDARD OF REVIEW.

We review dissolution of marriage cases de novo as they are heard in equity. *In re Marriage of McDermott*, 827 N.W.2d 671, 676 (Iowa 2013). We examine the entire record and adjudicate anew the issues before us, though we give weight to the findings of the district court, especially its determinations of credibility. *Id.* We will disturb a property distribution award only where there has been a failure to do equity. *Id.* Our only concern in determining child custody

---

applied in a case where the district court awarded shared care but the parenting time was not equal); *but see In re Marriage of Fox*, 559 N.W.2d 26, 29 (Iowa 1997) (refusing to apply the off-set support calculation where the record showed the child spent one-third of her time with the father but the parties stipulated to shared physical care because the court concluded the time the father spent with the child did not exceed that typically enjoyed in a liberal visitation situation); *see also In re Marriage of Hynick*, 727 N.W.2d 575, 579-80 (Iowa 2007) (noting the difference between shared care and physical care with visitation and noting visitation varies widely and "can even approach an amount *almost equal* to the time spent with the caretaker parent" (emphasis added)).

and care is the best interest of the children. *In re Marriage of Fennelly*, 737 N.W.2d 97, 101 (Iowa 2007).

## III. PHYSICAL CARE.

Alicia claims on appeal that she was the children's primary caretaker, particularly of Michael who was three weeks old at the time of trial, and as such, she should be awarded physical care of both children. She admits that Justin was a good father but claims there was substantial evidence that he controlled, intimidated, and physically abused her, and placing the children in his physical care is not in the children's long-term best interests.

Our objective when deciding which parent should have physical care is to place the children "in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). We consider the nonexclusive lists of factors found in Iowa Code section 598.41(3)[2] along with other factors found in *In re*

---

[2] These factors include:

    a. Whether each parent would be a suitable custodian for the child.
    b. Whether the psychological and emotional needs and development of the child will suffer due to lack of active contact with and attention from both parents.
    c. Whether the parents can communicate with each other regarding the child's needs.
    d. Whether both parents have actively cared for the child before and since the separation.
    e. Whether each parent can support the other parent's relationship with the child.
    f. Whether the custody arrangement is in accord with the child's wishes or whether the child has strong opposition, taking into consideration the child's age and maturity.
    g. Whether one or both the parents agree or are opposed to joint custody.
    h. The geographic proximity of the parents.
    i. Whether the safety of the child, other children, or the other parent will be jeopardized by the awarding of joint custody or by unsupervised or unrestricted visitation.

*Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974).[3] Stability and continuity are important factors to be considered because "the successful caregiving by one spouse in the past is a strong predictor that future care of the children will be of the same quality." *Hansen*, 733 N.W.2d at 696–97.

In this case the court, after hearing the allegations of abuse posed by both parties, was convinced neither party presented a physical threat to the other. We

---

j. Whether a history of domestic abuse, as defined in section 236.2, exists. In determining whether a history of domestic abuse exists, the court's consideration shall include but is not limited to commencement of an action pursuant to section 236.3, the issuance of a protective order against the parent or the issuance of a court order or consent agreement pursuant to section 236.5, the issuance of an emergency order pursuant to section 236.6, the holding of a parent in contempt pursuant to section 664A.7, the response of a peace officer to the scene of alleged domestic abuse or the arrest of a parent following response to a report of alleged domestic abuse, or a conviction for domestic abuse assault pursuant to section 708.2A.

k. Whether a parent has allowed a person custody or control of, or unsupervised access to a child after knowing the person is required to register or is on the sex offender registry as a sex offender under chapter 692A.

Iowa Code § 598.41(3).

[3] These factors include:

1. The characteristics of each child, including age, maturity, mental and physical health.

2. The emotional, social, moral, material, and educational needs of the child.

3. The characteristics of each parent, including age, character, stability, mental and physical health.

4. The capacity and interest of each parent to provide for the emotional, social, moral, material, and educational needs of the child.

5. The interpersonal relationship between the child and each parent.

6. The interpersonal relationship between the child and its siblings.

7. The effect on the child of continuing or disrupting an existing custodial status.

8. The nature of each proposed environment, including its stability and wholesomeness.

9. The preference of the child, if the child is of sufficient age and maturity.

10. The report and recommendation of the attorney for the child or other independent investigator.

11. Available alternatives.

12. Any other relevant matter the evidence in a particular case may disclose.

*Winter*, 223 N.W.2d at 166–67.

agree. Both Justin and Alicia have historically provided care for the oldest child; the age of the youngest at the time of the dissolution trial prevents an assessment of the historical primary caregiver.

The court considered, and ultimately agreed with, the custody evaluator. Alicia asserts it was improper for the court to accept and rely on this evaluation report because Hilliard ignored several key facts that undermine her conclusion and unfairly favored Justin. Specifically, Alicia believes the report should have been rejected because Hilliard viewed a video taken by Justin of one of the visitation exchanges, and this video was not provided to Alicia during discovery, though it was specifically requested. Alicia objected to questions posed to Hilliard about the video, which the court sustained. However, the court refused to reject the whole report, instead stating it would take the lack of production of the video into account as it evaluated and weighed the report.

We have reviewed Hilliard's report and find that there was no mention of the video Alicia complains of. While Hilliard at trial admitted to seeing the video, it was not listed in the report as an item Hilliard reviewed, and it does not appear to have helped form the basis of any of her opinions. It is within the court's discretion to admit or exclude a custody evaluator's report from the record. *In re Marriage of Kunkel*, 555 N.W.2d 250, 254 (Iowa 1996). The custody evaluator's recommendation is not binding on the district court or on appeal.

Based on our de novo review of the record, we agree with the district court's decision placing the physical care of the children with Justin. The court noted it would have preferred to award shared physical care but could not because of the parties' inability to work together, their failure to foster the

children's relationship with the other parent, and the no-contact order that remained in effect. The court found Justin was better able to be fair in overseeing and consulting with Alicia on parenting issues, justifying placing physical care, and the decision making power that entails, with Justin. Alicia's visitation schedule is set at fifty-percent of the time, which is indicative of the confidence the district court had in her ability to appropriately care for the children. We affirm the district court's decision on physical care.

## IV.  RETIREMENT ACCOUNT.

In his cross-appeal, Justin claims the district court should have awarded him fifty percent of Alicia's 401(k). Justin asserts this is equitable in light of the fact that Alicia was awarded the marital home without having to pay him any equity.

Our focus in dividing martial property is to do so equitably after considering the factors in Iowa Code section 598.21(5).[4]  *McDermott*, 827

---

[4] These factors include:

    a. The length of the marriage.

    b. The property brought to the marriage by each party.

    c. The contribution of each party to the marriage, giving appropriate economic value to each party's contribution in homemaking and child care services.

    d. The age and physical and emotional health of the parties.

    e. The contribution by one party to the education, training, or increased earning power of the other.

    f. The earning capacity of each party, including educational background, training, employment skills, work experience, length of absence from the job market, custodial responsibilities for children, and the time and expense necessary to acquire sufficient education or training to enable the party to become self-supporting at a standard of living reasonably comparable to that enjoyed during the marriage.

    g. The desirability of awarding the family home or the right to live in the family home for a reasonable period to the party having custody of the children, or if the parties have joint legal custody, to the party having physical care of the children.

N.W.2d at 678. In this case the court refused to divide the retirement plans of the parties in light of the short-term nature of the marriage. We agree this was equitable in this case. Alicia had started funding her 401(k) with her employer before the marriage. The marriage lasted less than three years. Both parties are employed with good incomes, which should allow them each the financial resources to save for retirement. Justin's argument that the 401(k) needs to be divided because Alicia was awarded the marital home holds little weight as the district court found the home had no equity, as the assessed value was lower than the amount secured by the mortgage. We affirm the district court's property distribution award.

## V.  APPELLATE ATTORNEY FEES.

Finally, Justin claims he is entitled to appellate attorney fees.

Appellate attorney fees are not a matter of right, but rather rest in this court's discretion. Factors to be considered in determining whether to award attorney fees include: "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal."

---

h. The amount and duration of an order granting support payments to either party pursuant to section 598.21A and whether the property division should be in lieu of such payments.

i. Other economic circumstances of each party, including pension benefits, vested or unvested. Future interests may be considered, but expectancies or interests arising from inherited or gifted property created under a will or other instrument under which the trustee, trustor, trust protector, or owner has the power to remove the party in question as a beneficiary, shall not be considered.

j. The tax consequences to each party.

k. Any written agreement made by the parties concerning property distribution.

l. The provisions of an antenuptial agreement.

m. Other factors the court may determine to be relevant in an individual case.

*In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006) (citation omitted). In light of the fact that both parties have the ability to pay their own attorney fees and the fact Justin's cross-appeal was not granted, we decline to award appellate attorney fees to Justin.

Costs on appeal are assessed to Alicia.

**AFFIRMED.**