# IN THE COURT OF APPEALS OF IOWA

No. 14-1138
Filed March 11, 2015

**LANE KYLE MCMULLEN,**
　　　Plaintiff-Appellee,

**vs.**

**ALISON MICHELLE ISENHART,**
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Linn County, Marsha Bergan, Judge.


　　　A mother appeals a district court order placing physical care of her child with the child's father. **AFFIRMED.**


　　　Caitlin L. Slessor and Allison M. Heffern of Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, for appellant.

　　　M. Victoria Cole of M. Victoria Cole Law Firm, P.C., Cedar Rapids, for appellee.


　　　Heard by Vaitheswaran, P.J., and Tabor and Mullins, JJ.

**VAITHESWARAN, P.J.**

A mother appeals a district court order placing physical care of her child with the child's father.

### I.     Background Facts and Proceedings

Alison Isenhart and Lane McMullen became romantically involved in 2009. They had a child in 2011. The parents had a rocky relationship, which continued intermittently for several months after the child's birth. The parties permanently separated in early 2012.

Following the separation, Isenhart filed a petition for relief from domestic abuse. The district court issued a civil protective order but cancelled the order after a hearing.

Meanwhile, McMullen filed a petition for custody of the child. The district court granted Isenhart temporary physical care, subject to visitation with McMullen.

In the interim, the parents met to exchange property and tensions escalated to the point where McMullen placed his hands on Isenhart. Isenhart reported the incident to police, who charged McMullen with assault causing bodily injury (domestic abuse).[1] The district court entered a criminal no-contact order. Although the order did not prohibit McMullen from having contact with the child, Isenhart refused to allow visits until after the court issued a temporary

---

[1] At trial on the custody petition, McMullen's attorney asked the district court to take judicial notice of the criminal file. Isenhart's attorney stated she did not object and the district court agreed to take judicial notice of the entire file. The court asked McMullen's attorney to ensure the court obtained the file. Portions of the file are included in the appendix.

custody order. McMullen was eventually acquitted of the assault charge and the criminal no contact order was cancelled.

The case proceeded to trial on the custody petition. After some delay, the district court issued an order granting McMullen physical care of the child. Isenhart appealed.

## II. Physical Care

Isenhart contends the district court should have granted her physical care of the child. The governing consideration is the best interests of the child. Iowa R. App. P. 6.904(3)(o). The analysis is the same whether the parents are married or unmarried. See Lambert v. Everist, 418 N.W.2d 40, 42 (Iowa 1998). Our review is de novo. Iowa R. App. P. 6.907. We give weight to the district court's credibility findings but we are not bound by them. Iowa R. App. P. 6.904(3)(g).

Those credibility findings favored McMullen. As a preliminary matter, Isenhart contends we should disregard them in light of the court's delay in issuing the custody order. In her view, the court's memory of the trial testimony faded with time, rendering the credibility assessment suspect.

To the contrary, the court's detailed findings of fact closely tracked the trial transcript. Accordingly, we see no reason to discount the credibility findings in favor of McMullen. To the extent McMullen's version of events differed from Isenhart's version—and this happened often—we give weight to McMullen's version.

On the merits, Isenhart contends she should have been granted physical care of the child because she served as the child's primary caretaker prior to

issuance of the final custody order. *See* Iowa Code § 598.41(3)(d) (2013). A person's primary caretaking role certainly is a factor in the analysis. *In re Marriage of Kunkel*, 555 N.W.2d 250, 253 (Iowa Ct. App. 1996). But it does not ensure an award of physical care. *Id.* While acknowledging Isenhart "provided more of [the child's] day-to-day care than" McMullen, the district court found McMullen, "exercised regular visitation, and . . . routinely requested more time with his daughter." The court further found an absence of "testimony that [McMullen] provided anything other than excellent care for [the child] during the times that he had her in his care." The court finally found Isenhart would undermine McMullin's relationship with the child. The record supports these findings.

McMullen testified he asked for additional time with his daughter after the temporary orders were entered but could "think of very few" requests Isenhart granted. He cited his attempts to pick-up the child early from daycare, attempts that were stymied by Isenhart, who provided the daycare center with the temporary custody order and, according to the daycare provider, told staff not to permit early pick-ups. He also testified Isenhart refused to alter the visitation schedule to accommodate special circumstances, forcing him to forfeit visits.

McMullen also testified he tried to help with the child "any way [he] could possibly help." He did laundry and dishes and cared for the child, but stated his involvement was only as permitted by Isenhart. For example, he asked Isenhart "on many occasions" to work together on things like potty training, but Isenhart declined to "respond" or refused to "tell [him] what she [was] doing" so he could "keep it consistent with what she is doing." Her view, according to McMullen,

was "I don't care what you think, I'm going to do what I want to do." He continued, "[D]ecisions are made by [Isenhart]. I just have to go along with them. I get asked my opinion. If I give it and it differs from hers, it doesn't matter." In fact, when McMullen "crossed" Isehnart, Isenhart kicked him out of her condominium. Based on this record, we agree McMullen took an active interest in the child, notwithstanding Isehart's role as primary caretaker.

We also agree with the district court's finding that Isenhart failed to support McMullen's relationship with the child. *See* Iowa Code § 598.41(3)(e). The instances cited above provide some indication of her behavior. In addition, Isenhart refused to let McMullen add the child to his health insurance plan, denied McMullen visits for approximately six weeks before the temporary custody order was entered, failed to keep McMullen informed of the child's medical appointments, and made unsubstantiated allegations of domestic abuse against him. In short, Isenhart minimized McMullen's parental role. *See Kunkel*, 555 N.W.2d at 253 (finding mother's "contentious disposition and hostile temperament incompatible with the considerable rights and responsibilities attending an award of physical care"). This factor supports the district court's decision to grant McMullen physical care of the child.

We reach this conclusion notwithstanding the close bond the child shared with her half-brother, who was in Isenhart's physical care. Separation of half-siblings is an important consideration. *See In re Marriage of Quirk-Edwards*, 509 N.W.2d 476, 480 (Iowa 1993). But, as the district court explained, the very real likelihood that Isenhart would undermine McMullen's relationship with the child

justified the separation. Fortunately, Isenhart made efforts to preserve the bond by ensuring weekday and weekend time with both children.

We affirm the district court order granting McMullen physical care of the child.

### III. *Appellate Attorney Fees*

Isenhart seeks an award of $2500 in appellate attorney fees. Because she did not prevail, we decline her request.

**AFFIRMED.**