**IN THE COURT OF APPEALS OF IOWA**

No. 14-1432
Filed November 12, 2015

IN RE THE MARRIAGE OF BRADLEY K. DODGE
AND PAOLA CAMACHO

Upon the Petition of
**BRADLEY K. DODGE,**
     Petitioner-Appellant,

**And Concerning**
**PAOLA CAMACHO,**
     Respondent-Appellee.
_____

Appeal from the Iowa District Court for Clay County, Patrick M. Carr,

Judge.

A father appeals the district court's decision granting his former wife

physical care of the parties' child. **AFFIRMED.**

Lisa Mazurek of Mazurek Law Firm, P.C., Cherokee, for appellant.

Paola Camacho, Spirit Lake, appellee pro se.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**VOGEL, Judge.**

Bradley Dodge (Brad) appeals the district court's decision granting his former wife, Paola Camacho, physical care of the parties' child. Recognizing the district court is able to observe the demeanor of the witnesses, and therefore, is in a better position to assess their credibility, we affirm the court's decision placing physical care of the parties' child with Paola.

## I. Background Facts & Proceedings

Brad, who is from Spencer, Iowa, and Paola, who is from Bogota, Columbia, met on an on-line dating site. They were married on March 27, 2009, in Columbia, but the shine wore off the relationship rather quickly. Paola did not move to Iowa until June 26, 2010, shortly before the birth of their daughter. Brad is also the father of two adult children from a previous marriage. Paola has a child from a previous relationship who lived with the parties part of the time.

On May 27, 2012, Paola, who was distraught and frightened, went to the home of a neighbor and called 911. Brad was arrested and charged with domestic abuse assault and obstruction of emergency communications. A no-contact order was issued. After about three weeks Paola requested that the no-contact order be dropped. The criminal proceedings were dismissed when Paola did not appear for the trial. Based on the same incident the Iowa Department of Human Services issued a confirmed report of the child's presence during claimed domestic abuse, but determined it was an isolated incident that was unlikely to occur again.

The parties separated in September 2012. Paola moved to Spirit Lake. They voluntarily agreed to a shared care arrangement where the child alternated

between the parties' homes on a weekly schedule. The child attended a preschool in Spencer on the weeks she was in Brad's care and a different preschool in Spirit Lake on the weeks she was in Paola's care.

On February 1, 2013, Brad filed a petition for dissolution of marriage. The dissolution hearing was held over three non-consecutive days. Paola, who appeared pro se, participated with the assistance of an interpreter. At the time of the hearing Brad was fifty-eight years old. He was employed at Eaton Corporation, earning about $53,000 per year. Paola was thirty-eight years old and employed at Wal-Mart, earning about $13,500 per year.

Paola testified she had been physically and verbally abused by Brad during the marriage. She submitted a recording of a telephone call in which Brad yelled at her and made derogatory statements. Brad denied physically abusing Paola. He testified, "I'm a yeller. I'm excitable," but denied being violent. Brad's former wife, Vicki Dodge, testified Brad was verbally abusive to her during their marriage, but not physically abusive. A neighbor, Crystal Doppler, whom the court found to be a credible, neutral witness, testified she heard Brad screaming, swearing, and yelling on several occasions.

The district court issued a dissolution decree for the parties on August 7, 2014, granting the parties joint legal custody of the child, with Paola having physical care. The court found both parties to be competent parents, and could provide for the child's day-to-day needs. However, mindful that Brad had engaged in negative behavior towards Paola, the court concluded Brad was unlikely to be able to put his feelings aside and support Paola's role in the child's life. The court found Paola was more likely to support and encourage the child's

relationship with her father. Brad was granted liberal visitation with the child. He was ordered to pay child support of $744 per month and to provide health insurance. Brad now appeals the physical care provision of the dissolution decree.[1]

## II.    Standard of Review

Our review in dissolution cases is de novo. Iowa R. App. P. 6.907; *In re Marriage of Fennelly*, 737 N.W.2d 97, 100 (Iowa 2007). We examine the entire record and determine anew the issues properly presented. *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). We give weight to the factual findings of the district court, but are not bound by them. *In re Marriage of Geil*, 509 N.W.2d 738, 741 (Iowa 1993).

## III.    Physical Care

Brad claims he should have been granted physical care of the parties' child. He points out that he had physical care of his other two children for many years and did not deny his former wife access to the children. He states Paola did not consistently care for her other child, but left him in the care of relatives in Columbia several times when she traveled to Iowa. Brad asserts he is the more stable parent, particularly in his history of employment. He states the child was attending preschool in Spencer when Paola decided to enroll the child in a second preschool in Spirit Lake, which he felt was unnecessarily confusing. He was also concerned because Paola would sometimes take the child out of the

---

[1] Paola's appellate brief was struck by the Iowa Supreme Court for failure to comply with the rules of appellate procedure. Thus, the case is submitted to us solely on Brad's brief as the appellant.

preschool in Spencer to spend time with her, rather than permit her to participate in that day's preschool activity.

The critical issue before us is the best interests of the child. Iowa R. App. P. 6.904(3)(o). This must, of necessity, be the first and governing consideration in our discussion. *In re Marriage of Rebouche*, 587 N.W.2d 795, 797 (Iowa Ct. App. 1998). The factors the court considers in awarding custody are enumerated in Iowa Code section 598.41 (2013) and *In re Marriage of Winter*, 223 N.W.2d 165, 166-67 (Iowa 1974). The court should select a custodial parent who can minister more effectively to the long-range best interests of the child. *In re Marriage of Kramer*, 297 N.W.2d 359, 363 (Iowa 1980). The objective should always be to place the child in the environment most likely to bring the child to a healthy physical, mental, and social maturity. *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007). Each custody decision is based on its own particular facts. *In re Marriage of Will*, 489 N.W.2d 394, 397 (Iowa 1992).

In granting physical care to Paola, the district court found:

> Perhaps the most striking feature of the evidence is the well-proven lack of ability for [Brad] to contain his disgust and disdain for [Paola]. The evidence does not disclose that he is plainly guilty of a domestic abuse assault. Short of that, however, his behavior has been threatening, demeaning and insulting. This is clearly established by [the recording of the telephone call]. This conclusion is also strongly supported by the credible evidence of witness Crystal Doppler. The Court thinks that he will be unable to put these feelings aside and support [Paola's] role in their daughter's life.
> . . . .
> There is no credible evidence that [Paola] regards [Brad] with the same kind of disdain. On the contrary, the Court thinks that she will, if given the security of a final custody order, support and encourage the girl's relationship with her father.

We have stated in the past, "Constructive dialogue and cooperation on matters of mutual parental concern are unlikely if the custodial relationship is strained by contentiousness and hostility between the parents." *In re Marriage of Kunkel*, 555 N.W.2d 250, 253 (Iowa Ct. App. 1996). We have also found a parent's "contentious disposition and hostile temperament incompatible with the considerable rights and responsibilities attending an award of physical care." *Id.* at 254. Due to Brad's evident "disgust and disdain" for Paola, we agree with the district court's conclusion he was unlikely to be able to support Paola's relationship with the child.

After observing Brad and Paola over three days' of testimony, the court came to the conclusion it was in the child's best interests to be placed in the physical care of Paola. "We give considerable weight to a trial court's assessment of the credibility of witnesses." *In re Marriage of Jacobo*, 526 N.W.2d 859, 865 (Iowa 1995). This is because the district court is able to observe the demeanor of the witnesses, and therefore, is in a better position to assess their credibility. *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984).

We affirm the district court's decision placing physical care of the parties' child with Paola.

**AFFIRMED.**