**IN THE COURT OF APPEALS OF IOWA**

No. 16-1522
Filed March 22, 2017

**AMBER KACZINSKI,**
        Petitioner-Appellee,

**vs.**

**ADAM WELCH,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Clinton County, Stuart P. Werling,

Judge.


        Appeal from an order establishing physical care and support.  **AFFIRMED**

**IN PART AND REMANDED.**



        Judd J. Parker of Parker Law Office, Clinton, for appellant.

        Gary D. McKenrick of Cartee & McKenrick, P.C., Davenport, for appellee.


        Considered by Mullins, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

Amber Kaczinski and Adam Welch are the parents of P.K. (born 2007). The parties never married but maintained an on-again-off-again relationship after the child's birth. They separated for good when the child was approximately two-and-one-half years old. At the time of the parties' separation, paternity and support had been legally established but custody and visitation had not. The parties informally agreed Amber would serve as the child's primary caregiver with Adam having visitation every other weekend. This arrangement worked fairly well until December 2015. Adam refused to return P.K. to Amber's care for one week following a Christmas visitation. Adam contends the parties agreed to one-week visitation. Amber contends the parties agreed only to Christmas day. Regardelss, immediately after this incident, Amber initiated this proceeding to establish custody, visitation, and support. The district court granted the parties joint legal custody of the child, Amber physical care of the child, and Adam reasonable visitation. The district court ordered Adam to pay $658.93/month as child support. Adam appeals, requesting shared care of the child and a reduction in child support.

I.

Our review of cases in equity is de novo. *See* Iowa R. App. P. 6.907. We review the entire record and decide anew the factual and legal issues presented. *See In re Marriage of Williams*, 589 N.W.2d 759, 761 (Iowa Ct. App. 1998). Prior cases have little precedential value; the court must make its determination based on the unique facts and circumstances of each case. *See In re Marriage of Kleist*, 538 N.W.2d 273, 276 (Iowa 1995); *In re Marriage of Snowden*, No. 14-

1920, 2015 WL 4233449, at *1 (Iowa Ct. App. July 9, 2015) ("All happy families are alike; each unhappy family is unhappy in its own way." (quoting Leo Tolstoy, *Anna Karenina* 1 (1873))). Although our review is de novo, we exercise our review with deference to the district court. *See In re P.C.*, No. 16-0893, 2016 WL 4379580, at *2 (Iowa Ct. App. Aug. 17, 2016).

## II.

Adam requests joint physical care of the child. Physical care is defined as "the right and responsibility to maintain a home for the minor child and provide for the routine care of the child." Iowa Code § 598.1(7) (2015). In making the physical care determination, we look to the factors set forth in Iowa Code section 598.41(3) and our case law. *See* Iowa Code § 598.41(3); Iowa Code § 600B.40 ("In determining the visitation or custody arrangements of a child born out of wedlock, if a judgment of paternity is entered and the mother of the child has not been awarded sole custody, section 598.41 shall apply to the determination, as applicable, and the court shall consider the factors specified in section 598.41, subsection 3, including but not limited to the factor related to a parent's history of domestic abuse."); *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974). In determining whether joint physical care is appropriate, we consider the following factors: (1) the "stability and continuity of caregiving"; (2) "the ability of spouses to communicate and show mutual respect"; (3) "the degree of conflict between parents"; and (4) "the degree to which the parents are in general agreement about their approach to daily matters." *In re Marriage of Hansen*, 733 N.W.2d 683, 696–99 (Iowa 2007). "Each factor, however, does not necessarily impact the decision with equal force." *In re Marriage of Daniels*, 568 N.W.2d 51,

54 (Iowa Ct. App. 1997). In considering the factors, our ultimate objective "is to place the child in the environment most likely to bring him to healthy mental, physical, and social maturity." *McKee v. Dicus*, 785 N.W.2d 733, 737 (Iowa Ct. App. 2010). The controlling consideration is the children's best interests. *See In re Marriage of Kunkel*, 555 N.W.2d 250, 253 (Iowa Ct. App. 1996).

Amber lives with her fiancé, Cody, in DeWitt. Amber and Cody have two children together, and Cody has physical care of another child from a previous relationship. Cody is employed as a builder. Amber was a stay-at-home mother except for a brief period of time in 2016 when she obtained full time employment but discovered the cost of child care for the children offset her earnings. At the time of trial, she had quit her job to provide in-home daycare services. She testified she expected to make $200 per week, increasing "ideally" to $400 per week. Several years prior to trial in this case, there was an incident of domestic violence in the home resulting in Cody's arrest and conviction. Amber testified this was a one-time occurrence. She and Cody have worked on their relationship and had no further incidents. Adam testified he has continuing concerns about Cody's behavior and the stability of Cody and Amber's relationship.

Adam lives with his girlfriend, Ashley, in Wheatland, approximately fifteen to twenty minutes from DeWitt. Their home is a mixed household: the two have a biological child, and Ashley has physical care of a child from a previous relationship. Ashley is studying nursing in online courses and providing care for the children. Adam works as a shift supervisor at a plastics manufacturer. He had worked second shift but learned the day before trial he would be moved to third shift, which would allow him more time home with his children and which

would enable him to provide school transportation in the mornings. Adam testified he typically worked forty hours per week at $19.15 per hour and often worked twenty overtime hours per week at between $28-29 per hour. He testified he would reduce his overtime hours if awarded shared care.

The most relevant consideration in this case is the history of caregiving. "In considering whether to award joint physical care where there are two suitable parents, stability and continuity of caregiving have traditionally been primary factors." *Hansen*, 733 N.W.2d at 696. "Stability and continuity concepts have been . . . expressed in terms of an approximation rule, namely, that the caregiving of parents in the post-[separation] world should be in rough proportion to that which predated the [separation]." *Id.* at 697. Amber has served as the child's primary caretaker for nine years. Amber and Adam had an agreed-upon arrangement in which Amber had physical care of the child and Adam had visitation every other weekend. Amber was responsible for making the routine decisions regarding care of the child, including decisions regarding medical care, education, and extracurricular activities. Adam has been largely uninvolved in these decisions or activities. For example, Adam has not attended any school conferences. The child now has established patterns in her social, familial, and educational life. It is in the best interests of the child to maintain stability in the present caretaking arrangement. We decline to change the physical care arrangement.

III.

We next address child support. Both parties submitted child support guideline worksheets in support of their respective cases. Amber's worksheet

set forth her income as $18,700 per year. She testified this was a fair estimate of income from her child-care business. However, the district court calculated child support using imputed income of $15,080 annually, which was based on the minimum wage. The district court found Adam's income to be $55,500 per year. The district court calculated Adam's child support obligation to be $658.93 per month. Adam argues the child support award is too high and the district court "should have imputed more than minimum wage [to] Amber, as she was gainfully employed and working overtime absent her voluntary decision to quit [her previous job]."

We disagree with Adam that the district court should have calculated Amber's income based on her prior employment. She terminated her employment because her income was offset by her daycare expenses for four children. In other words, she did not terminate her employment to manipulate the award of child support. However, we agree the district court should not have imputed minimum wage income to Amber. A court may consider earning capacity of the parents rather than their actual earnings. *See, e.g., In re Marriage of McKenzie*, 709 N.W.2d 528, 533 (Iowa 2006); *In re Marriage of Bonnette*, 492 N.W.2d 717, 722 (Iowa 1992). However, before doing so the court must "make a finding that, if actual earnings were used, substantial injustice would result or that adjustments would be necessary to provide for the needs of the child and to do justice." *In re Marriage of Flattery*, 537 N.W.2d 801, 803 (Iowa Ct. App. 1995). The court here did not make any explicit finding that substantial injustice would result from using Amber's actual or projected earnings from her business. Amber reported her income as $18,700 on her child support

guidelines worksheet.  She testified this was a fair estimate of her income.  There is nothing in the record to the contrary.  We find this amount is Amber's income for the purposes of calculating child support.

IV.

We affirm the district court's award of physical care to Amber.  We remand for recalculation of the child support award based on Amber's income of $18,700 per year and Adam's income of $55,500 per year.

**AFFIRMED IN PART AND REMANDED.**