# IN THE COURT OF APPEALS OF IOWA

No. 23-0417
Filed December 20, 2023

IN RE THE MARRIAGE OF TINA JANTI
AND BRIAN JANTI

Upon the Petition of
TINA JANTI,
     Petitioner-Appellee,

And Concerning
BRIAN JANTI,
     Respondent-Appellant.

_____

Appeal from the Iowa District Court for Dallas County, Thomas P. Murphy, Judge.

The respondent appeals the district court's decision placing the parties' child in their joint physical care. **AFFIRMED.**

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

Stephen C. Humke of Miller, Zimmerman & Evans P.L.C., Des Moines, for appellee.

Considered by Bower, C.J., and Schumacher and Langholz, JJ.

**SCHUMACHER, Judge.**

Brian Janti appeals from the decree dissolving his marriage to Tina Janti, challenging the district court's decision to place their child in their joint physical care. Both parties request appellate attorney fees. We determine the court properly considered the evidence and found the child should be placed in the joint physical care of both parents. We decline to award appellate attorney fees.

## I.        Background Facts & Proceedings

Brian and Tina were married in 2015. They have one child, born in 2017. Tina petitioned for dissolution of marriage in 2021. A temporary order filed in November 2021 placed the child in the parties' joint legal custody and temporary physical care with Brian. Tina was granted temporary visitation every Wednesday, alternating weekends, and alternating holidays. She was obligated to pay temporary child support of $1460 per month; temporary spousal support of $1000 per month; and the tuition for the child's private school during the pendency of the dissolution, that tuition being just under $1000 per month.

At the time the parties married, they were living in Seattle, Washington. Tina was a life insurance agent. Brian worked in the oil industry in Alaska, where he would spend one or two weeks away from home and then have a week off, when he would return to the parties' home in Seattle. When the child was born, the parties agreed they did not want the child to go to daycare and that Brian would stay home while the child was an infant and a toddler and Tina would support the family financially. At the time of trial, the child was in kindergarten.

The parties moved several times after their marriage, including to California and Idaho, and eventually relocated to the Des Moines area when Tina was offered

a partnership in the business where she had been working. Prior to trial, Tina resigned as a partner, but she continued to work for the same company, although her job description and hours changed when the company closed the Des Moines office in 2021. She adjusted her schedule so she could spend more time with the child. Tina has an annual income of about $184,621.

In March 2022, Brian began a part-time job primarily as a daycare provider at a gym. He has an annual income of $21,580. The district court found he could work full time and imputed income to Brian of $51,000 per year. Brian is enrolled in the wind turbine technology program at a local community college, which Brian testified is "a similar field of industry to process technology that [he is] used to in Alaska." He appears to recognize that he will need to work full-time after the dissolution. Both parties reside in the same school district and live about three miles from each other. Both parties are in good health and have a solid support system in the Des Moines area.

In the parties' dissolution decree, the court granted the parties joint legal custody of the child and joint physical care, ordering a 2/2/3 schedule, with Tina having the child Monday, Tuesday, Friday, Saturday, and Sunday on week one and Wednesday and Thursday on week two. Brian has the reverse of this schedule. The court ordered Tina to pay child support of $404.84 per month. She was ordered to pay spousal support of $1500 per month for eighteen months. When her spousal support obligation is completed, Tina's child support obligation increases to $737.03 per month. Brian appeals the dissolution decree as to the district court's decision to place the child in the parties' joint physical care rather than in Brian's physical care.

## II.     Standard of Review

We review dissolution of marriage decrees in equity.  *In re Marriage of Knickerbocker*, 601 N.W.2d 48, 50 (Iowa 1999).  In equitable actions, our review is de novo.  Iowa R. App. P. 6.907.  "In such cases, '[w]e examine the entire record and adjudicate anew rights on the issues properly presented.'" *Knickerbocker*, 601 N.W.2d at 50–51 (alteration in original) (citation omitted).  "In equity cases, especially when considering the credibility of witnesses, the court gives weight to the fact findings of the district court, but is not bound by them."  Iowa R. App. P. 6.904(3)(g).

## III.     Physical Care

Brian contends the district court should have placed the child in his physical care rather than in the parties' joint physical care.  He points out that he usually took care of the child during the marriage while Tina worked long hours as an insurance agent.  He argues the parties cannot communicate, have a high degree of conflict, and do not share parenting styles.  And he asserts that joint physical care is not in the child's best interests.

The court considers the factors in Iowa Code section 598.41(3) (2021) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), in determining what physical care placement is in the best interests of the child.  Courts look for a placement that will best promote the long-term physical and emotional health of the child.  *In re Marriage of Hansen*, 733 N.W.2d 683, 700 (Iowa 2007).  Each decision is based on the unique facts of the case.  *Id.*  "In child custody cases, the first and governing consideration of the courts is the best interests of the child."

Iowa R. App. P. 6.904(3)(o); *In re Marriage of Roberts*, 954 N.W.2d 757, 760 (Iowa Ct. App. 2020).

In considering whether joint physical care is in the child's best interests, the court looks at these factors:

> (1) "approximation"—what has been the historical care giving arrangement for the child between the two parties; (2) the ability of the spouses to communicate and show mutual respect; (3) the degree of conflict between the parents; and (4) "the degree to which the parents are in general agreement about their approach to daily matters."

*In re Marriage of Berning*, 745 N.W.2d 90, 92 (Iowa Ct. App. 2007) (quoting *Hansen*, 733 N.W.2d at 697–99).

There is no presumption in favor of the mother or the father. *See In re Marriage of Bowen*, 219 N.W.2d 683, 688 (Iowa 1974). Greater primary care experience is one of many factors the court considers, but it does not ensure an award of physical care. *In re Marriage of Wilson*, 532 N.W.2d 493, 495 (Iowa 1995).

While the factor of greater primary care experience is considered in the context of established joint custody principles, it does not necessarily distinguish the more experienced parent as the preferred physical caretaker. The parent awarded physical care must also possess those parental attributes that are consistent with the obligations inherent in a joint custody arrangement. Most notable among these is the ability to set aside understandable resentments and act in the best interests of the child. *In re Marriage of Kunkel*, 555 N.W.2d 250, 253 (Iowa Ct. App. 1996).

The district court found, "The court is particularly concerned about Brian's willingness to support Tina's relationship with [the child]. Brian's surreptitious recordings, snarky messages, limiting Tina's time, and his other behaviors are troubling." The court determined one of the recordings "suggests that Brian is purposefully making transitions difficult." The court was concerned that if Brian had physical care, "he [would] wield it like a sword, that he [would] refuse to cooperate with Tina and undermine her relationship with [the child]."

Although we are not bound by the district court's factual findings, we give weight to the court's credibility findings. See Iowa R. App. P. 6.904(3)(g). "There is good reason for us to pay very close attention to the trial court's assessment of the credibility of witnesses. A trial court deciding dissolution cases 'is greatly helped in making a wise decision about the parties by listening to them and watching them in person.'" In re Marriage of Vrban, 359 N.W.2d 420, 423 (Iowa 1984) (citation omitted).

In the dissolution decree, the court noted, "Brian made faces while Tina testified" and Brian was dismissive of Tina's parenting skills. After viewing Brian's conduct during the trial, the court found he contributed to the parties' communication problems more than Tina. The court determined Brian's claims of domestic abuse by Tina were not credible. We give weight to all of these findings by the court, as the court was able to directly view the parties. See id.

And the court highlighted:

> Tina and Brian each have the capacity and desire to provide for [the child's] emotional, social, moral, material, and educational needs. Brian argues that the pre-separation work schedule to which the parties agreed sets the framework for the future. But that was an

agreement based on the parties' marriage and pre-separation schedules and career paths.

Changes to [the child's] schedule will not negatively impact him. The parties live near each other and can continue to do so. With litigation over, the court believes the parties will make transitions easier and they will be less stressful for [the child]. Both parents are attentive and have good social networks through their churches.

We determine the award of joint physical care is in the child's best interests. While Brian was the primary caregiver during the marriage, Tina's work schedule post separation changed. Tina testified the communication between the parties was improving, and the court found her testimony to be more credible. The parties live near each other and should be able to work together for the best interests of the child. We affirm the court's decision placing the child in the parties' joint physical care.

## IV. Attorney Fees

Both parties request attorney fees for this appeal. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Stenzel*, 908 N.W.2d 524, 538 (Iowa Ct. App. 2018). When considering whether to exercise our discretion we consider "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal." *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005) (citation omitted).

After considering the relative merits of the appeal and each party's ability to pay attorney fees, we decline to award appellate attorney fees to either party. Each party shall pay his or her own attorney fees for this appeal.

We affirm the decision of the district court.

**AFFIRMED.**