# IN THE COURT OF APPEALS OF IOWA

No. 22-1702
Filed February 7, 2024

**MALLORY ROSE MARIE LOGSTON,**
  Plaintiff-Appellee,

**vs.**

**MATTHEW DAVID STEEN,**
  Defendant-Appellant.
_____

  Appeal from the Iowa District Court for Appanoose County, Lucy J. Gamon,

Judge.


  Matthew Steen appeals various provisions of an order relating to the parties'

minor child.  **AFFIRMED.**


  Carly M. Schomaker of Gaumer, Emanuel, Carpenter & Goldsmith, P.C.,

Ottumwa, for appellant.

  Cynthia D. Hucks of Box and Box Attorneys at Law, Ottumwa, for appellee.


  Heard by Bower, C.J., and Buller and Langholz, JJ.

**BOWER, Chief Judge.**

Matthew Steen appeals the district court's ruling granting Mallory Logston physical care and the dependency tax exemption and setting his visitation rights. Upon our review, we affirm.

**I.      *Background Facts and Proceedings***

Matthew and Mallory lived together with their child, born in 2019.  For the first month after the child's birth, Matthew was an active caregiver.  But when the parties' relationship began to deteriorate, he took a step back and spent more time out of the house, avoided family events, and opted to play video games in a spare room when he was home.

The relationship reached its breaking point in November 2020 when Matthew threw keys to Mallory, which she failed to catch.  Matthew told her to pick them up, and when she refused, he grabbed her by the neck and forced her to the ground.  This incident, along with many verbal altercations often witnessed by others, precipitated Mallory and the child moving from the home.[1]  The following month, Mallory called the Centerville Police to report an altercation with Matthew, which took place when Mallory arrived at the parties' home to gather some belongings.  When Matthew realized Mallory did not bring the child, Matthew became irate and began kicking items and yelling.  No criminal charges were filed.

After Matthew and Mallory separated, the child lived with Mallory.  Matthew has had regular visitation but has never cared for the child for longer than a

---

[1] Mallory was granted a temporary protective order, largely based on the neck-grabbing incident.  She later requested the order be dismissed, as it inhibited her ability to check on the child when in Matthew's care.

weekend at any one time. More than once, Matthew returned the child early because he could not cope with misbehavior. Matthew often cried at the end of the child's visits, seeking comfort from the three-year-old child.

Since their separation in November 2020, Mallory and Matthew have had few constructive conversations regarding any topic, least of all the child. The record is rife with exchanges of profanity, tears, and yelling. As the district court put it:

> For the first year of [the child's] life, Matthew and Mallory fought frequently and otherwise rarely talked. Now that Matthew has been exercising visitation for a year and a half, there seems to be a significant amount of in-person contact, phone calls, face timing, and text messaging between the parties regarding [the child's] welfare. This high level of communication could potentially be beneficial, except that so much of the communication which occurs between the parties is completely disrespectful and damaging to their parenting relationship.

Matthew estimated seventy-five percent of the parties' communication was negative. Mallory testified communication between the parties has become worse since separation.

Both Matthew and Mallory enjoy good health, and neither has a criminal record. Both parties are employed. Matthew is a general laborer with Appanoose County, earning $51,327 annually. Mallory works as an administrative assistant at the Centerville Police Department, earning $33,072 annually. Each has an appropriate house with separate space for the child.

The district court entered a temporary order in March 2021, granting Mallory temporary physical care as she had been the child's primary caregiver. The court granted Matthew temporary visitation and ordered him to pay child support.

The district court held a hearing over two days in September 2022 on the issues of custody, child support, visitation, and attorney fees. The court thereafter entered an order awarding the parties joint legal custody, Mallory physical care, and Matthew visitation rights. The court also ordered Matthew to pay monthly child and medical support. Finally, the court determined Mallory should receive the yearly tax exemption.

Matthew appeals, claiming the district court erred in: (i) granting Mallory primary physical custody; (ii) granting Matthew "minimal" visitation; and (iii) granting Mallory the dependency tax exemption.

## II. Standard of Review

We review custody cases, which are tried in equity, de novo. Iowa R. App. P. 6.907. "While not bound by the trial court's determination of factual findings, we will give considerable weight to them, especially when considering the credibility of witnesses." *In re Marriage of Farrell*, 481 N.W.2d 528, 530 (Iowa Ct. App. 1991).

## III. Analysis

*A. Physical Care.* The criteria governing custody decisions are the same whether the parents are dissolving their marriage or, as here, never married. *See Lambert v. Everist*, 418 N.W.2d 40, 42 (Iowa 1988). The controlling consideration is the best interests of the child. Iowa R. App. P. 6.904(3)(o). In making our determination, gender is irrelevant, and neither parent has a "greater burden than the other in attempting to obtain custody." *In re Marriage of Bowen*, 219 N.W.2d 683, 688 (Iowa 1974). We analyze the factors enumerated in Iowa Code section 598.41(3) (2020) and *In re Marriage of Winter*, 223 N.W.2d 165, 166–67 (Iowa 1974), with the objective "to place the child[] in the environment most likely

to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

On appeal, Matthew argues the court should have awarded him physical care of the child as "the evidence supports [the child] is more likely to thrive in [his] care." Alternatively, Matthew requests joint physical care. In support of his contention, Matthew relies on *In re Marriage of Kunkel*, 555 N.W.2d 250 (Iowa Ct. App. 1996). In *Kunkel*, we reversed a district court ruling granting a mother physical care. 555 N.W.2d at 253–54. The record showed the mother was abrasive and argumentative in most every situation. *Id.* at 252–53. She was labelled as immature and unable to control her emotional outbursts:

> In this case, Dewey has clearly distinguished himself as the more mature and stable parent. In comparison, we find Angie's contentious disposition and hostile temperament incompatible with the considerable rights and responsibilities attending an award of physical care. The record also indicates [the child] has been subjected to harsh, although less than abusive treatment, when Angie has succumbed to her temperamental impulses. There is also evidence that parenting [the child] is a higher priority for Dewey than it is for Angie. We accordingly modify the district court's decree by awarding [the child]'s physical care to Dewey.

*Id.* at 254.

We first note prior decisions are of little value in physical-care cases, as each case is based on specific factual circumstances impossible to reduce to a simple legal formula. *See In re Marriage of Weidner*, 338 N.W.2d 351, 358 (Iowa 1983). Additionally, *Kunkel* is distinguishable in several ways from this case. In *Kunkel*, our decision to reverse the district court was founded on a record that demonstrated the father was significantly more mature and stable than the mother. 555 N.W.2d at 254. Here, the record does not demonstrate a significant disparity

between the maturity of the parties. Both Matthew and Mallory have engaged in abusive behavior towards one another, as shown by audio transcripts and testimony by Mallory and her mother. While the audio recordings may be an accurate depiction of how Mallory behaves when communicating with Matthew, we find it unlikely Matthew was acting as he normally would while recording a phone call to gather evidence of Mallory's behavior. Mallory and her mother provided credible testimony of Matthew's verbal and physical abuse of Mallory.

Matthew further claims Mallory's role as the primary caretaker does not outweigh the evidence supporting a decision to grant Matthew physical care. We disagree. The district court's reasoning helps clarify this issue:

> The primary advantage of placing [the child] in Mallory's primary care is that she has been the primary caretaker of [the child] since birth. For the first year of [the child]'s life, Mallory was almost the exclusive caretaker, as Matthew helped out very little. Mallory has been a very protective parent throughout the Covid period. It is unsurprising that Mallory and [the child] now enjoy a very tight bond. [The child] is now a happy, generally healthy, flourishing child, in no small part due to Mallory's loving and attentive care.
>
> Mallory ensures that [the child] is appropriately housed, clothed, and fed. She arranged for [the child] to be placed in a daycare setting with a trusted provider who [the child] loves. Mallory has made and attended all of [the child's] doctor's appointments. She is obviously providing the child with appropriate social and intellectual stimulation, as the child can be heard on numerous of the audio recordings, and speaks very well for [their] age.

Matthew also points to Mallory's lack of support for the child having a relationship with Matthew or his family. We disagree. As the district court noted, Mallory has never interfered with Matthew's court-ordered visitation rights. And Mallory's decision not to honor additional requested visitation is not persuasive to Matthew's claim, particularly considering Matthew's choice not to exercise his full visitation rights. As noted before, he has returned the child to Mallory early at least

twice because the child was misbehaving. He has also unilaterally cancelled visits because the child was ill. Although we note Matthew has been a good father during the visitation time he does exercise, the fact he has never cared for the child for longer than a weekend is worrying and a substantial factor in granting Mallory primary physical care.

We affirm the district court decision granting Mallory physical care of the child.

*B. Visitation.* Matthew next claims the district court erred in granting him "minimal" visitation. The district court ordered the following visitation schedule: Every other weekend from 5:00 p.m. Friday to 5:00 p.m. Sunday; every Wednesday evening from 4:00 p.m. to 7:00 p.m.; alternating major holidays; Father's Day and Matthew's birthday; three nonconsecutive weeks per summer; and any other visits the parties agree upon.[2]

Upon awarding one parent physical care, the district court shall award the other parent visitation that assures the child the "opportunity for the maximum continuing physical and emotional contact with both parents." *In re Marriage of Gensley*, 777 N.W.2d 705, 714 (Iowa Ct. App. 2009) (quoting Iowa Code § 598.41(1)(a)). The current order provides Matthew slightly more visitation time than he was afforded under the temporary order—an additional three non-consecutive weekends during the summer. Mallory has never denied Matthew any of his court-ordered visits. The fact Matthew is often unable to take care of the

---

[2] We note Matthew provides no alternative to the current visitation schedule in his briefing.

child for a weekend without significant support from others weighs against expanding visitation. Accordingly, we affirm the district court's visitation schedule.

*C. Dependency Tax Exemption.* Matthew argues the district court erred by granting Mallory a dependency tax exemption every year, given his payment of child support. Matthew requests the parties alternate the exemption.

In general, the parent having physical care of a child has a right to claim the child as a tax exemption. *In re Marriage of Okland*, 699 N.W.2d 260, 269 (Iowa 2005). "However, courts have the authority to award tax exemptions to the noncustodial parent 'to achieve an equitable resolution of the economic issues presented.'" *Id.* (citation omitted).

Mallory testified she uses the income tax exemption as an emergency fund for the child. She testified the exemption saves her thousands of dollars per year. We also note Matthew's income is substantially more than Mallory's. We see no reason to deviate from the general rule here. We affirm the award of the income tax exemption.

*D. Attorney Fees.* Mallory requests appellate attorney fees "based on the superfluous nature of the appeal." Although appellate attorney fees are not awarded as a matter of right, we may award them as a matter of discretion. *See In re Marriage of Kurtt*, 561 N.W.2d 385, 389 (Iowa Ct. App. 1997). "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *Id.* We find the circumstances here do not support an award of appellate attorney fees. Each party shall be responsible for his or her own attorney fees.

The costs associated with this action are assessed to Matthew.

**AFFIRMED.**